UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANGEL DUCHITANGA, FRANCISCO MARTINEZ,
LUIS JUNCAL, ESTELA PEREZ, and EDWIN
BUSTILLO, on behalf of themselves and others similarly
situated,

                            Plaintiffs,

                   v.

THE 43 AVE TOP N' QUALITY CORPORATION d/b/a
TOP & QUALITY CLEANERS, SANG HUN KIM,
"JOHN" (FIRST NAME UNKNOWN) PACK, "JOHN"
(FIRST NAME UNKNOWN) JONG, SUNNY
CLEANERS INC. d/b/a TOP & QUALITY CLEANERS,
SUN CLEANERS INC. d/b/a CLEAN TECH 47, JAE
HEE SIM, CHARLIE "DOE" (LAST NAME
UNKNOWN), THOMAS "DOE" (LAST NAME
UNKNOWN), and YSB CLEANERS INC. d/b/a STEVE'S
DRY CLEANERS,

                           Defendants.

Case No.

**COLLECTIVE AND CLASS
ACTION COMPLAINT**

        Plaintiffs ANGEL DUCHITANGA ("Mr. Duchitanga"), FRANCISCO MARTINEZ ("Mr.

Martinez"), LUIS JUNCAL ("Mr. Juncal"), ESTELA PEREZ ("Ms. Perez"), and EDWIN

BUSTILLO ("Mr. Bustillo") (collectively, "Plaintiffs"), on their own behalf and on behalf of all

others similarly situated, by and through their undersigned attorneys, Hang & Associates, PLLC,

hereby file this complaint against Defendants THE 43 AVE TOP N' QUALITY CORPORATION

d/b/a TOP & QUALITY CLEANERS, SANG HUN KIM, "JOHN" (FIRST NAME UNKNOWN)

PACK, and "JOHN" (FIRST NAME UNKNOWN) JONG (collectively, the "Kim Defendants"),

SUNNY CLEANERS INC. d/b/a TOP & QUALITY CLEANERS, SUN CLEANERS INC. d/b/a

CLEAN TECH 47, JAE HEE SIM, CHARLIE "DOE" (LAST NAME UNKNOWN), THOMAS

"DOE" (LAST NAME UNKNOWN), and YSB CLEANERS INC. d/b/a STEVE'S DRY CLEANERS (collectively, the "Sunny Defendants" or, jointly with the Kim Defendants, the "Defendants") and state as follows:

## INTRODUCTION

1.      This is an action brought by Plaintiffs on their own behalf and on behalf of similarly situated employees, alleging violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), the New York Labor Law ("NYLL") for various willful and unlawful employment policies, patterns and/or practices.

2.      Plaintiffs bring additional claims for violations of the New York Human Rights Law ("NYHRL") and the New York City Human Rights Law ("NYCHRL"), arising from discrimination and a hostile work environment on the basis of Plaintiffs' race and gender.

3.      Upon information and belief, Defendants have willfully and intentionally committed widespread violations of the FLSA, the NYLL, the NYHRL, and the NYCHRL by engaging in a pattern and practice of failing to pay their employees, including Plaintiffs, compensation for minimum wages, overtime compensation for all hours worked over forty (40) each workweek, spread of hours pay for workdays lasting ten (10) hours or more, for failing to provide wage notices and pay stubs as required by the NYLL, and for illegal pay discrimination on the basis of race, age national origin, ethnicity, and sex.

4.      Plaintiffs allege pursuant to the FLSA, that they are entitled to recover from the Defendants:

> (1) unpaid minimum wages,
>
> (2) unpaid overtime wages,
>
> (3) liquidated damages,
>
> (4) prejudgment and post-judgment interest, and

(5) attorneys' fees and costs.

5.     Plaintiffs further allege pursuant to New York Labor Law § 650 et seq. and 12 New York Codes, Rules and Regulations §§ 146 ("NYCRR") that they are entitled to recover from the Defendants:

(1) unpaid minimum wages,

(2) unpaid overtime compensation,

(3) unpaid spread of hours premium for each day they worked ten (10) or more hours,

(4) compensation for failure to provide wage notices at the time of hiring and failure to provide paystubs in violation of the NYLL,

(5) liquidated damages equal to the sum of unpaid minimum wage and overtime pursuant to the NYLL,

(6) prejudgment and post-judgment interest, and

(7) attorneys' fees and costs.

6.     Plaintiffs further allege, on their own behalf and on behalf of all similarly situated current and former employees of Defendants, that they were deprived of their statutory rights as a result of Defendants' unlawful discriminatory policies and/or practices on the basis of Plaintiffs' race and/or ethnicity pursuant to the New York Human Rights Law, N.Y. Exec. L. 296 (1)(a) and New York City Human Rights Law, N.Y.C.A.C. 8-107(1)(a), that they are entitled to recover from Defendants:

(1) compensatory damages,

(2) damages for emotional distress,

(3) punitive damages, and

(4) attorneys' fees and costs.

## JURISDICTION AND VENUE

7.     This Court may properly maintain jurisdiction over Defendants because Defendants' contacts with this state and this judicial district, including but not limited to operating a principal place of business and employing workers in this District, are sufficient to exercise jurisdiction over Defendants while complying with traditional notions of fair play and substantial justice.

8.     This Court has original federal question jurisdiction over this controversy under 29 U.S.C. §216(b), 28 U.S.C. § 1331, 1337, and 1343 because the claims asserted herein seek to redress violations of the Plaintiffs' federal civil and statutory rights.

9.     This Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because these claims are so closely related to Plaintiffs' federal employment law claims that they form parts of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District, and the following acts and omissions giving rise to the claims alleged herein took place in this District.

## PLAINTIFFS

11.     Mr. Duchitanga is a New York City resident who was employed by Defendants' dry cleaning business, Top & Quality, located at 42-16 43rd Avenue, Sunnyside, NY 11104 for about 15 years, from about 2002 until he was improperly fired on January 31, 2017.

12.     Mr. Martinez is a New York City resident who was employed by Defendants' dry cleaning business, Clean Tech 47, located at 47 Columbia Street, New York, NY 10002 during May 2016, who was transferred to Top & Quality beginning in April 2016, and who was fired on or about January 15, 2017.

13.     Mr. Juncal is a New York City resident who was employed by Defendants' dry cleaning business, Top & Quality, for over ten years and who was constructively fired on or about January 15, 2017.

14.     Ms. Perez is a New York City resident who was employed by Defendants' dry cleaning business, Top & Quality, for over ten years and who was constructively fired on or about January 15, 2017.

15.     Edwin Bustillo is a New York City resident who was employed by Defendants' dry cleaning business, Top & Quality, from on or around October 20, 2016 to on or around January 31, 2017.

## DEFENDANTS

16.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages, overtime compensation, spread of hours pay, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

17.     Plaintiffs have fulfilled all conditions precedent to the institution of this action and/or conditions have been waived.

### *Sunny Cleaners, Inc. is the successor corporation to The 43 Ave Top N' Quality Corporation*

18.     Upon information and belief, THE 43 AVE TOP N' QUALITY CORPORATION is a domestic business corporation organized and existing under the laws of the State of New York that provided dry cleaning services from 2002 until about October 2015.

19.     Upon information and belief, THE 43 AVE TOP N' QUALITY CORPORATION maintained a principal place of business at 42-16 43rd Avenue, Sunnyside, NY 11104 from 2002 until about October 2015, at which time it was sold to SUNNY CLEANERS INC.

20.     Upon information and belief, THE 43 AVE TOP N' QUALITY CORPORATION is no longer engaging in business, but it has not been dissolved.

21.     Upon information and belief, SUNNY CLEANERS, INC. is a domestic business corporation organized and existing under the laws of the State of New York.

22.     Upon information and belief, SUNNY CLEANERS, INC. maintains its principal place of business at 42-16 43rd Avenue, Sunnyside, NY 11104, which it purchased in or around October 2015 from THE 43 AVE TOP N' QUALITY CORPORATION.

23.     Upon information and belief, THE 43 AVE TOP N' QUALITY CORPORATION and SUNNY CLEANERS, INC. are both doing business as "TOP & QUALITY," or else they do or did business as joint employers concurrently or as successor employers or both.

24.     In any case, the Kim Defendants and the Sunny Defendants are jointly and severally liable for, *inter alia*, minimum wages, spread of hours pay, overtime compensation, and discrimination damages owed to Plaintiffs and similarly situated employees.

### *Sunny Cleaners, Inc. is a parent company of YSB Cleaners Inc. and Sun Cleaners, Inc., or a joint employer with YSB Cleaners Inc. and Sun Cleaners, Inc., or both*

25.     Upon information and belief, Sun Cleaners, Inc. is a domestic business corporation organized and existing under the laws of the State of New York that maintains a principal place of business at 47 Columbia Street, New York, NY 10002, where it provides dry cleaning services.

26.     Upon information and belief, Sun Cleaners, Inc. is a wholly-owned subsidiary of Sunny Cleaners, Inc., or a joint employer with Sunny Cleaners, Inc., or both because both corporations share managers, staff, can freely transfer managers and employees between locations, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same owners.

27.     Upon information and belief, Defendant YSB Cleaners, Inc. d/b/a Steve's Dry Cleaners is a domestic business corporation organized and existing under the laws of the State of

New York that maintains a principal place of business at 4924 Fort Hamilton Parkway Brooklyn, New York, 11219, where it provides dry cleaning services.

28.     Upon information and belief, YSB Cleaners, Inc. is a wholly-owned subsidiary of Sunny Cleaners, Inc., or a joint employer with Sunny Cleaners, Inc., or both because both corporations share managers, staff, can freely transfer managers and employees between locations, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same owners. For example, on at least one occasion, Plaintiff Francisco Martinez was paid by check issued by YSB Cleaners, Inc. while he was working at the 47 Columbia Street location, ostensibly controlled at this time by Sunny Cleaners, Inc.

29.     Upon information and belief, YSB Cleaners, Inc. is a wholly-owned subsidiary of Sunny Cleaners, Inc., or a joint employer with Sunny Cleaners, Inc., or both because both corporations share managers, staff, can freely transfer managers and employees between locations, and are otherwise engaged in related activities performed through unified operation and/or common control for a common business purpose, and are co-owned by the same owners. For example, on at least one occasion, Plaintiff Francisco Martinez was paid by check issued by YSB Cleaners, Inc. while he was working at the 47 Columbia Street location, ostensibly controlled at this time by Sunny Cleaners, Inc.

30.     Upon information and belief, the Kim Defendants and the Sunny Defendants are considered the same employer under the New York Anti-Shirt Changer Law, NYLL §219.4, because "employees or the subsequent employer are engaged in substantially the same work in substantially the same working conditions under substantially the same supervisors."

31.     In any case, the Kim Defendants and the Sunny Defendants are jointly and severally liable for, *inter alia*, minimum wages, spread of hours pay, overtime compensation, and discrimination damages owed to Plaintiffs and similarly situated employees.

32.     Upon information and belief, at all relevant times, the Kim Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA.

33.     Upon information and belief, at all relevant times, the Sunny Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of FLSA.

34.     Upon information and belief, the Kim Defendants had gross sales in excess of $500,000 per year.

35.     Upon information and belief, the Sunny Defendants had gross sales in excess of $500,000 per year.

36.     Upon information and belief, the Kim Defendants purchased and handled goods moved in interstate commerce.

37.     Upon information and belief, the Sunny Defendants purchased and handled goods moved in interstate commerce.

38.     At all relevant times, the work performed by Plaintiffs was directly essential to the businesses operated by the Kim Defendants and the Sunny Defendants.

39.     At all relevant times, Defendants knowingly and willfully failed to pay Plaintiffs their lawfully earned minimum wages, overtime compensation, spread of hours pay, and failed to provide them a wage notice at the time of hiring in violation of the NYLL.

40.     At all relevant times, Defendants paid Plaintiffs in the same unlawful manner regardless of time period or location.

*Jae Hee Sim*

41.     Upon information and belief, Defendant JAE HEE SIM is the owner, officer, director and/or managing agent of SUNNY CLEANERS, INC. d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an employer as defined in the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Top & Quality.

42.     Upon information and belief, Defendant Sim owns the stock of SUNNY CLEANERS, INC. d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

*Charlie "Doe" (Last Name Unkown)*

43.     Upon information and belief, Defendant Charlie Doe is the owner, officer, director and/or managing agent of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an employer as defined in the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with the Corporate Defendants.

44.     Upon information and belief, Defendant Charlie Doe owns the stock of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

45.     Upon information and belief, Defendant Charlie Doe is the owner, officer, director and/or managing agent of SUNNY CLEANERS, INC. d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an employer as defined in the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with The Corporate Defendants.

46.     Upon information and belief, Defendant Charlie Doe owns the stock of SUNNY CLEANERS, INC. d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

*Thomas "Doe" (Last Name Unknown)*

47.     Upon information and belief, Defendant Thomas Doe is the owner, officer, director and/or managing agent of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an employer as defined in the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with The Corporate Defendants.

48.     Upon information and belief, Defendant Thomas Doe owns the stock of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

49.     Upon information and belief, Defendant Thomas Doe is the owner, officer, director and/or managing agent SUNNY CLEANERS, INC. d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an

employer as defined in the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with The Corporate Defendants.

50.     Upon information and belief, Defendant Thomas Doe owns the stock of SUNNY CLEANERS, INC. d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

## THE KIM DEFENDANTS - INDIVIDUALS

### Sang Hun Kim

51.     Upon information and belief, Defendant SANG HUN KIM is the owner, officer, director and/or managing agent of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an employer as defined in the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with Top & Quality.

52.     Upon information and belief, Defendant Kim owns the stock of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

### "John" (First Name Unknown) Pak

53.     Upon information and belief, Defendant "John" (First Name Unknown) Pak is the owner, officer, director and/or managing agent of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an employer as defined in the FLSA, 29

U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with The Corporate Defendants.

54.     Upon information and belief, Defendant Pak owns the stock of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

### *"John" (First Name Unknown) Jong*

55.     Upon information and belief, Defendant "John" (First Name Unknown) Jong is the owner, officer, director and/or managing agent of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY, who participated in the day-to-day operations of the business, acted intentionally and maliciously, is an employer as defined in the FLSA, 29 U.S.C. §203(d) and regulations promulgated thereunder, 29 C.F.R. §791.2, NYLL §2 and the regulations thereunder, and is jointly and severally liable with The Corporate Defendants.

56.     Upon information and belief, Defendant Jong owns the stock of THE 43 AVE TOP N' QUALITY CORPORATION d/b/a TOP & QUALITY and manages and makes all business decisions, including but not limited to the amount of the salary that employees receive and the number of hours that employees work.

## STATEMENT OF FACTS

### General Wage and Hour Allegations

57.     Defendants committed the following alleged acts knowingly, intentionally and willfully.

58.     Defendants knew that the nonpayment of minimum wages, overtime pay, spread of hours premium, pay discrimination on the basis of sex, and failure to provide wage notices and

pay stubs would financially injure Plaintiffs and similarly situated employees and violate state and federal laws.

59.     Defendants did not keep time cards or have any other method of tracking the hours that Plaintiffs and similarly situated employees spent working.

60.     Defendants did not compensate Plaintiffs for overtime compensation according to state and federal laws.

61.     At all relevant times, Defendants had a policy and practice of withholding payment for an employee's first few days of work, explaining that such payment would be remitted only if and when the employee stopped working for Defendants. Defendants never released this withheld money to Plaintiffs or to similarly situated employees.

62.     While the named Plaintiffs in this case no longer work for Defendants and are now able to pursue their rights with less fear of retaliation, upon information and belief, current Top & Quality employees are too afraid to file a police report regarding sexual assault in the workplace or to speak with an attorney regarding their rights under the FLSA and the NYLL.

63.     Defendants did not provide Plaintiffs and other Class members with written notices about the terms and conditions of their employment upon hire in relation to their rate of pay, regular pay cycle, and rate of overtime pay.

64.     Defendants knew that the nonpayment of minimum wages, overtime pay, spread of hours premium, and tools of the trade expenses would economically injure Plaintiffs and the Class Members by their violation of federal and state laws.

### Angel Duchitanga

65.     Mr. Duchitanga was hired by Defendants over ten years ago and he worked exclusively at Top & Quality, located at 42-16 43rd Avenue, Sunnyside, NY 11104.

66.     Mr. Duchitanga's responsibilities included cleaning and folding shirts, using washing machines, and using an industrial steam press.

67.     While employed by Defendants, Mr. Duchitanga, a dry cleaner employee who used industrial washing machines and an industrial steam press to clean clothes, was in a non-exempt role under federal and state laws, which require employers to pay overtime to employees in such roles.

68.     Defendants did not provide Mr. Duchitanga with wage notices when they hired him or at any time thereafter.

69.     Defendants did not provide Mr. Duchitanga with pay stubs at any time.

70.     Although Mr. Duchitanga worked for Top & Quality for about fifteen years, this Complaint asserts claims beginning on January 1, 2011, which is the earliest date for which the NYLL permits recovery.

*Duchitanga – First Period*
*2011*

71.     From January 1, 2011 to about December 31, 2011, Mr. Duchitanga worked 53 hours each week. On Mondays and Tuesdays, he worked 10 hours from 8:00am to 6:00pm, including an unpaid 30-minute break. On Wednesdays through Saturdays, he worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. He was off on Sunday.

72.     During this period, Mr. Duchitanga was paid $450 in cash each week regardless of the number of hours that he worked.

73.     Mr. Duchitanga was never paid an overtime premium during this period.

74.     Mr. Duchitanga was never paid the spread of hours premium during this period.

*Duchitanga – Second Period*
*2012-2014*

75.     From January 1, 2012 to about December 31, 2014, Mr. Duchitanga worked 53 hours each week. On Mondays and Tuesdays, he worked 9.5 hours from 8:00am to 6:00pm,

including an unpaid 30-minute break. On Wednesdays through Saturdays, he worked 8.5 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. He was off on Sunday.

76.   During this period, Mr. Duchitanga was paid $470 in cash each week regardless of the number of hours that he worked.

77.   Mr. Duchitanga was never paid an overtime premium during this period.

78.   Mr. Duchitanga was never paid the spread of hours premium during this period.

*Duchitanga – Third Period*
*2015 to 2017*

79.   From about January 1, 2015 through January 31, 2017, Mr. Duchitanga's schedule was changed to 51 hours per week. On Mondays and Tuesdays, he worked 9.5 hours from 7:30am to 5:00pm, including an unpaid 30-minute break. On Wednesdays through Fridays, he worked 9 hours from 7:30am to 4:30pm, including an unpaid 30-minute break. On Saturdays, he worked 8 hours from 8:00am to 4:00pm, including an unpaid 30-minute break. He was off on Sunday.

80.   During this period, Mr. Duchitanga was paid $500 in cash each week regardless of the number of hours that he worked.

81.   Mr. Duchitanga was never paid an overtime premium during this period.

82.   Mr. Duchitanga was never paid the spread of hours premium during this period.

*Retaliation and Wrongful Termination*
*January 2017*

83.   Top & Quality is equipped with security cameras that record most areas of the business.

84.   Beginning in or around September 2016, the security cameras in the area where cleaning staff work were rotated towards the front of the store. As a result, the work area was no longer surveilled by cameras.

85.     Mr. Duchitanga witnessed Defendant Charlie Doe repeatedly groping two female employees over a period of several weeks.

86.     Shortly after New Year's Day in 2017, Mr. Duchitanga verbally admonished Defendant Charlie Doe for sexually harassing his coworkers.

87.     A few days after the admonishment, Defendant Charlie Doe told Mr. Duchitanga to stay home from work until further notice, claiming that the business was doing poorly.

88.     After two weeks without news from Top & Quality, Mr. Duchitanga went to the business in person. Defendant Charlie Doe continued to claim that the business was doing poorly and that there was no work for Mr. Duchitanga.

89.     Mr. Duchitanga then told Defendant Charlie Doe that he no longer wished to work for Top & Quality and he left the premises.

90.     Upon information and belief, Defendant Charlie Doe lied about the business doing poorly in order to constructively fire Mr. Duchitanga, constituting an unlawful termination in retaliation for reporting sexual harassment in the workplace.

**Francisco Martinez**

91.     Mr. Martinez was hired by Defendants in or around May 2016.

92.     When Defendants hired Mr. Martinez, they promised to pay him $15 per hour.

93.     Defendants never paid Mr. Martinez consistently with a $15 per hour rate.

94.     Mr. Martinez worked at Clean Tech 47 during his first month.

95.     In or about September 2016, shortly after Top & Quality was sold, Mr. Martinez was transferred from Clean Tech 47 and served the remainder of his employment at Top & Quality.

96.     Mr. Martinez's primary responsibility was to use an industrial steam press.

97.     While employed by Defendants, Mr. Martinez, a dry cleaner employee who used a steam press, was in a non-exempt role under federal and state laws, which require employers to pay overtime to employees in such roles.

98. Defendants did not provide Mr. Martinez with wage notices when they hired him or at any time thereafter.

99. Defendants did not provide Mr. Martinez with pay stubs at any time.

100. Defendants assigned Mr. Martinez the same schedule for the entire course of his employment. On Mondays and Tuesdays, he worked 9.5 hours from 7:30am to 5:00pm, including an unpaid 30-minute break. On Wednesdays through Fridays, he worked 9 hours from 7:30am to 4:30pm, including an unpaid 30-minute break. On Saturdays, he worked 8 hours from 8:00am to 4:00pm, including an unpaid 30-minute break. He was off on Sunday.

101. During this period, Mr. Martinez was paid a total of $460 in cash plus $200 by check each week, for a total of $660 per week, regardless of the number of hours that he worked.

102. Mr. Martinez was never paid an overtime premium.

103. Mr. Martinez was never paid the spread of hours premium.

**Luis Juncal**

104. Mr. Juncal was hired by Defendants over ten years ago and he worked exclusively at Top & Quality, located at 42-16 43rd Avenue, Sunnyside, NY 11104.

105. Mr. Juncal's responsibilities included cleaning and folding shirts, using washing machines, and using industrial steam presses.

106. While employed by Defendants, Mr. Juncal, a steam press operator for a dry cleaning business, was in a non-exempt role under federal and state laws, which require employers to pay overtime to employees in such roles.

107. Defendants did not provide Mr. Duchitanga with wage notices when they hired him or at any time thereafter.

108. Defendants did not provide Mr. Duchitanga with pay stubs at any time.

109.     Although Mr. Duchitanga worked for Top & Quality for more than ten years, this Complaint asserts claims beginning on January 1, 2011, which is the earliest date for which the NYLL permits recovery.

*Juncal – First Period*
*2011 through August 2016*

110.     From January 1, 2011 to about August 31, 2016, Mr. Juncal worked 53 hours each week. On Mondays and Tuesdays, he worked 10 hours from 8:00am to 6:00pm, including an unpaid 30-minute break. On Wednesdays through Saturdays, he worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. He was off on Sunday.

111.     During this period, Mr. Juncal was paid a total of $550 in cash plus regardless of the number of hours that he worked.

112.     Mr. Martinez was never paid an overtime premium.

113.     Mr. Martinez was never paid the spread of hours premium.

*Juncal – Second Period*
*September 2016 through January 2017*

114.     From September 1, 2016 to about January 15, 2017, Defendants assigned Mr. to work 51 hours per week. On Mondays and Tuesdays, he worked 9.5 hours from 7:30am to 5:00pm, including an unpaid 30-minute break. On Wednesdays through Fridays, he worked 9 hours from 7:30am to 4:30pm, including an unpaid 30-minute break. On Saturdays, he worked 8 hours from 8:00am to 4:00pm, including an unpaid 30-minute break. He was off on Sunday.

115.     During this period, Mr. Juncal was paid a total of $600 in cash plus regardless of the number of hours that he worked.

116.     Mr. Martinez was never paid an overtime premium.

117.     Mr. Martinez was never paid the spread of hours premium.

**Estela Perez**

118.     Ms. Perez was hired by Defendants over ten years ago and she worked exclusively at Top & Quality, located at 42-16 43rd Avenue, Sunnyside, NY 11104.

119.     Ms. Perez's responsibilities included cleaning and folding shirts, using washing machines, and using an industrial steam press.

120.     While employed by Defendants, Ms. Perez, a dry cleaner employee who used industrial washing machines and an industrial steam press to clean clothes, was in a non-exempt role under federal and state laws, which require employers to pay overtime to employees in such roles.

121.     Defendants did not provide Ms. Perez with wage notices when they hired him or at any time thereafter.

122.     Defendants did not provide Ms. Perez with pay stubs at any time.

123.     Although Ms. Perez worked for Top & Quality for over ten years, this Complaint asserts claims beginning on January 1, 2011, which is the earliest date for which the NYLL permits recovery.

*Perez – First Period*
*2011*

124.     From January 1, 2011 to about December 31, 2011, Ms. Perez worked 53 hours each week. On Mondays and Tuesdays, she worked 10 hours from 8:00am to 6:00pm, including an unpaid 30-minute break. On Wednesdays through Saturdays, she worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. She was off on Sunday.

125.     During this period, Ms. Perez was paid $380 in cash each week regardless of the number of hours that she worked.

126.     The applicable minimum wage for this period is $7.25 per hour.

127.     Defendants willfully violated the FLSA and the NYLL during this period because they assigned Mr. Perez her 53-hour weekly schedule and determined her weekly salary of $380 during this period, thus compensating her only $7.17 per hour, below the required minimum wage.

128.     Ms. Perez was never paid an overtime premium during this period.

129.     Ms. Perez was never paid the spread of hours premium during this period.

*Perez – Second Period*
*2012-2014*

130.     From January 1, 2011 to about December 31, 2014, Ms. Perez worked 53 hours each week. On Mondays and Tuesdays, she worked 10 hours from 8:00am to 6:00pm, including an unpaid 30-minute break. On Wednesdays through Saturdays, she worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. She was off on Sunday.

131.     During this period, Ms. Perez was paid $420 in cash each week regardless of the number of hours that she worked.

132.     The applicable minimum wage for 2012 and 2013 is $7.25 per hour.

133.     The applicable minimum wage for 2014 is $8.00 per hour.

134.     Defendants willfully violated the FLSA and the NYLL in 2014 because they assigned Mr. Perez her 53-hour weekly schedule and determined her weekly salary of $420 during this period, thus compensating her only $7.92 per hour, below the required minimum wage.

135.     Ms. Perez was never paid an overtime premium during this period.

136.     Ms. Perez was never paid the spread of hours premium during this period

*Perez – Third Period*
*January through July 2015*

137.     From January 1, 2015 to about July 31, 2015, Ms. Perez worked 53 hours each week. On Mondays and Tuesdays, she worked 10 hours from 8:00am to 6:00pm, including an

unpaid 30-minute break. On Wednesdays through Saturdays, she worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. She was off on Sunday.

138.    During this period, Ms. Perez was paid $450 in cash each week regardless of the number of hours that she worked.

139.    The applicable minimum wage for this period is $8.75 per hour.

140.    Defendants willfully violated the FLSA and the NYLL during this period because they assigned Mr. Perez her 53-hour weekly schedule and determined her weekly salary of $450 during this period, thus compensating her only $8.49 per hour, below the required minimum wage.

141.    Ms. Perez was never paid an overtime premium during this period.

142.    Ms. Perez was never paid the spread of hours premium during this period

*Perez – Fourth Period*
*August 2015 through December 2015*

143.    From August 1, 2015 to about December 31, 2015, Ms. Perez worked 53 hours each week. On Mondays and Tuesdays, she worked 10 hours from 8:00am to 6:00pm, including an unpaid 30-minute break. On Wednesdays through Saturdays, she worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. She was off on Sunday.

144.    During this period, Ms. Perez was paid $470 in cash each week regardless of the number of hours that she worked.

145.    The applicable minimum wage for this period is $8.75 per hour.

146.    Ms. Perez was never paid an overtime premium during this period.

147.    Ms. Perez was never paid the spread of hours premium during this period

*Perez – Fifth Period*
*January 2016 and February 2016*

148.    From January 1, 2016 to about February 29, 2016, Ms. Perez worked 53 hours each week. On Mondays and Tuesdays, she worked 10 hours from 8:00am to 6:00pm, including an

unpaid 30-minute break. On Wednesdays through Saturdays, she worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. She was off on Sunday.

149.     During this period, Ms. Perez was paid $470 in cash each week regardless of the number of hours that she worked.

150.     The applicable minimum wage for this period is $9.00 per hour.

151.     Defendants willfully violated the FLSA and the NYLL during this period because they assigned Mr. Perez her 53-hour weekly schedule and determined her weekly salary of $470 during this period, thus compensating her only $8.87 per hour, below the required minimum wage.

152.     Ms. Perez was never paid an overtime premium during this period.

153.     Ms. Perez was never paid the spread of hours premium during this period

*Perez – Sixth Period*
*March 2016 through August 2016*

154.     From about March 1, 2016 to about August 31, 2016, Ms. Perez worked 53 hours each week. On Mondays and Tuesdays, she worked 10 hours from 8:00am to 6:00pm, including an unpaid 30-minute break. On Wednesdays through Saturdays, she worked 9 hours from 8:00am to 5:00pm, including an unpaid 30-minute break. She was off on Sunday.

155.     During this period, Ms. Perez was paid $480 in cash each week regardless of the number of hours that she worked.

156.     The applicable minimum wage for this period is $9.00 per hour.

157.     Ms. Perez was never paid an overtime premium during this period.

158.     Ms. Perez was never paid the spread of hours premium during this period

*Perez – Seventh Period*
*September 2016 through January 2017*

159.     From about September 1, 2016 to about January 15, 2017, Defendants reassigned Ms. Perez to work 51 hours per week. On Mondays and Tuesdays, she worked 9.5 hours from

7:30am to 5:00pm, including an unpaid 30-minute break. On Wednesdays through Fridays, she worked 9 hours from 7:30am to 4:30pm, including an unpaid 30-minute break. On Saturdays, she worked 8 hours from 8:00am to 4:00pm, including an unpaid 30-minute break. She was off on Sunday.

160.    In September 2016, Ms. Perez was paid $500 in cash each week regardless of the number of hours that she worked.

161.    In October 2016 through the last day of her employment with Defendants, Ms. Perez was paid $550 per week in cash regardless of the number of hours that she worked.

162.    The applicable minimum wage for 2016 is $9.00 per hour.

163.    Upon information and belief, Top & Quality, its associated corporations, and its managers, including the named Individual Defendants in this case, employ more than 10 people.

164.    The applicable minimum wage for 2017 for employers in New York City that employ more than 10 people is $13.00 per hour.

165.    Defendants willfully violated the FLSA and the NYLL during this period because they assigned Mr. Perez her 51-hour weekly schedule and determined her weekly salary of $550 during this period, thus compensating her only $10.78 per hour, below the required minimum wage.

166.    Ms. Perez was never paid an overtime premium during this period.

167.    Ms. Perez was never paid the spread of hours premium during this period

*Pay Discrimination on the Basis of Sex*
*2011*

168.    Plaintiff Estela Perez is female.

169.    Throughout Ms. Perez's employment with Defendants, there was a two-tiered compensation system in place under which female employees were paid dramatically less than similarly situated male employees.

170. This pay disparity existed even though Ms. Perez and similarly situated female employees: had the same level of skills, education, experience, and other relevant factors as similarly situated male employees; had the same title as such male employees; worked the same schedule as such male employees; carried out the same work under the same conditions as such male employees; and despite performing as well as or better than similarly situated male employees.

171. Thus, Defendants maintained a discriminatory policy or practice of underpaying female employees without any justification, at times even paying female employees below minimum wage.

**Edwin Bustillo**

172. Mr. Bustillo was hired by Defendants on or around October 20, 2016.

173. When Defendants hired Mr. Bustillo, they promised to pay him $15 per hour.

174. Defendants never paid Mr. Bustillo consistently with a $15 per hour rate.

175. Defendants withheld Mr. Bustillo's payments for his first four days of work, and told him that this money would be tendered only upon request if and when he stopped working for them.

176. Mr. Bustillo was fired without cause on or around January 31, 2017.

177. On or around January 31, 2017, after he was fired, Mr. Bustillo asked Defendants CHARLIE "DOE" (LAST NAME UNKNOWN) and THOMAS "DOE" (LAST NAME UNKNOWN) to remit the withheld payment for his first four days of work, but they refused to pay him this money.

178. Mr. Bustillo's primary responsibility was to use an industrial steam press.

179.     While employed by Defendants, Mr. Bustillo, a dry cleaner employee who used a steam press, was in a non-exempt role under federal and state laws, which require employers to pay overtime to employees in such roles.

180.     Defendants did not provide Mr. Bustillo with wage notices when they hired him or at any time thereafter.

181.     Defendants did not provide Mr. Bustillo with pay stubs at any time.

182.     Defendants assigned Mr. Bustillo the same schedule for the entire course of his employment, consisting of 51 hours per week over six days. On Mondays through Saturdays, he worked 8.5 hours from 7:30am to 4:00pm, including an unpaid 30-minute break each day. He was off on Sunday.

183.     During this period, Mr. Bustillo was paid $500 in cash regardless of the number of hours that he worked.

184.     Mr. Bustillo was never paid an overtime premium.

185.     Mr. Bustillo was never paid the spread of hours premium.

186.     Defendants committed the foregoing acts against the Plaintiffs and the FLSA Collective Action Members.

General Discrimination Allegations

187.     At all relevant times, Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) routinely groped female employees' breasts and genitals in the workplace.

188.     At all relevant times, Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) referred to the women they groped at work as "mine."

189.    Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) fired several female employees who asserted their right not to be sexually assaulted and harassed at work.

190.    Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) routinely used harassing, abusive, and racist language against Plaintiffs and all other Hispanic employees, calling them "garbage," "donkeys," "stupid," telling them that "You're Latino, so I'm worth more than you. You're worthless like the rest of" the Hispanic employees.

191.    On at least one occasion, Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) threatened Plaintiffs and similarly situated employees, telling them that "We know where you live. If you try to do something to stop us, something could happen to you."

192.    On multiple occasions, Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) claimed that the law permitted them to do whatever they liked, telling Plaintiffs and similarly situated employees that "My balls are the law."

193.    As a result of Defendants' racism, abuse, and threats, Plaintiffs and similarly situated employees fear for their jobs and their safety.

194.    Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) occasionally refused to permit employees to use the restroom.

195.    When Defendants Charlie "Doe" (Last Name Unknown) and Thomas "Doe" (Last Name Unknown) realized that Plaintiffs and similarly situated employees were in the restroom, they would routinely kick the restroom door to scare employees into leaving the bathroom faster.

**COLLECTIVE ACTION ALLEGATIONS**

196.    In violation of the FLSA and New York Labor Law and the supporting federal and New York State Department of Labor Regulations, Defendants knowingly and willfully operated their business with a policy of not paying Plaintiffs and other similarly situated employees either

26

the FLSA minimum wage rate, the FLSA overtime rate (of time and one-half), the New York State minimum wage rate, or the New York State overtime rate (of time and one-half).

197. Defendants knowingly and willfully operated their business with a policy of not paying the New York State spread of hours premium to Plaintiffs and other similarly situated employees.

198. Through entry of judgment in this case (the "Collective Action Period"), Plaintiffs bring this action individually and on behalf of all other and former non-exempt employees who have been or were employed by the Defendants at their restaurant for up to the last three (3) years, who were not paid minimum wages, overtime compensation for all hours worked in excess of forty (40) hours per week (the "Collective Action Members"), who have been subject to the same common decision, policy, and plan to not provide required wage notices at the time of hiring, and who were required to pay for tools of the trade that must be the burden of the employer, in contravention of federal and state labor laws.

199. Upon information and belief, the Collective Action Members are so numerous the joinder of all members is impracticable. The identity and precise number of such persons are unknown, and the facts upon which the calculations of that number may be ascertained are presently within the sole control of the Defendants. Upon information and belief, there are more than 10 Collective Action Members who have worked for or have continued to work for the Defendants during the Collective Action Period, most of whom would not likely file individual suits because they fear retaliation, lack adequate financial resources, access to attorneys, or knowledge of their claims. Therefore, Plaintiffs submit that this case should be certified as a collective action under the FLSA, 29 U.S.C. §216(b).

200. Plaintiffs will fairly and adequately protect the interests of the Collective Action Members, and have retained counsel that is experienced and competent in the field of employment

law and class action litigation. Plaintiffs have no interests that are contrary to or in conflict with those members of this collective action.

201.    This action should be certified as Collective Action because the prosecution of separate actions by individual members of the Collective Action would risk creating either inconsistent or varying adjudication with respect to individual members of this class that would, as a practical matter, be dispositive of the interests of Members who are not parties to the adjudication, or subsequently impair or impede their ability to protect their interests.

202.    A Collective Action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. Furthermore, inasmuch as the damages suffered by individual Collective Action Members may be relatively small, the expense and burden of individual litigation makes it virtually impossible for the members of the collective action to individually seek redress for the wrongs done to them. There will be no difficulty in the management of this action as collective action.

203.    Questions of law and fact common to members of the collective action predominate over questions that may affect only individual members because Defendants have acted on grounds generally applicable to all members. Among the questions of fact common to Plaintiffs and other Collective Action Members are:

a.   whether the Defendants employed Collective Action members within the meaning of the FLSA;

b.   whether the Defendants failed to pay the Collective Action Members statutory minimum wages required by the FLSA and the NYLL;

c.   whether the Defendants filed to pay the Collective Action Members overtime wages for all hours worked above forty (40) each workweek in violation of the FLSA and the regulation promulgated thereunder;

d. whether the Defendants failed to pay the Collective Action Members spread of hours compensation for each day an employee worked over 10 hours;

e. whether the Defendants required the Collective Action Members to pay for tools of the trade that the FLSA actually requires employers to pay;

f. whether the Defendants failed to provide the Collective Action Members with a wage notice at the time of hiring as required by the NYLL;

g. whether the Defendants' violations of the FLSA are willful as that terms is used within the context of the FLSA;

h. whether the Defendants had a policy or practice of paying female employees less than similarly situated male employees; and,

i. whether the Defendants are liable for all damages claimed hereunder, including but not limited to compensatory, punitive, and statutory damages, interest, costs and disbursements and attorneys' fees.

204. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a collective action.

205. Plaintiffs and others similarly situated have been substantially damaged by Defendants' unlawful conduct.

**CLASS ACTION ALLEGATIONS**

206. Plaintiffs bring their NYLL claims pursuant to Federal Rules of Civil Procedure ("F. R. C. P.") Rule 23, on behalf of all non-exempt persons employed by Defendants at their restaurant doing business as The Corporate Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

207. All said persons, including Plaintiffs, are referred to herein as the "Class." The Class members are readily ascertainable. The number and identity of the Class members are determinable from the records of Defendants. The hours assigned and worked, the positions held,

and the rate of pay for each Class Member is also determinable from Defendants' records. For purpose of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under said Rule 23.

208. The proposed Class is so numerous that joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parities and the Court. Although the precise number of such persons is unknown, and the facts on which the calculation of the number is presently within the sole control of the Defendants, upon information and belief, there are more than 10 members of the class.

209. Plaintiffs' claims are typical of those claims which could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants, as alleged herein, of failing to pay statutory minimum wages, overtime compensation, spread of hours pay, expenses related to tools of the trade, wage notice violations, and pay stub violations. Defendants' corporation-wide policies and practices, including but not limited to their failure to provide a wage notice at the time of hiring, affected all Class members similarly, and Defendants benefited from the same type of unfair and/ or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

210. Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in representing Plaintiffs in both class action and wage and hour employment litigation cases.

211. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation where

individual Class members lack the financial resources to vigorously prosecute corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expenses that numerous individual actions engender. The losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, thus the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. Further, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

212. Upon information and belief, Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the complaint a degree

of anonymity which allows for the vindication of their rights while eliminating or reducing these risks.

213.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a.   whether Defendants employed Plaintiffs and the Class within the meaning of the NYLL;

b.   whether Plaintiffs and Class members are entitled to minimum wages under the NYLL;

c.   whether Plaintiffs and Class members are entitled to overtime under the NYLL;

d.   whether Defendants maintained a policy, pattern and/or practice of failing to pay Plaintiffs and the Rule 23 Class spread of hours pay as required by the NYLL;

e.   whether the Defendants provided wage notices at the time of hiring to Plaintiffs and class members as required by the NYLL;

f.   whether the Defendants had a policy or practice of paying female employees less than similarly situated male employees;

g.   whether Defendants wrongfully terminated employees in retaliation for filing complaints of harassment in the workplace; and

h.   at what common rate, or rates subject to common method of calculation were and are the Defendants required to pay the Class members for their work

**STATEMENT OF CLAIMS**

**COUNT I**

**[Violations of the Fair Labor Standards Act—Minimum Wage**
**Brought on behalf of the Plaintiffs, and the FLSA Collective]**

214.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

215. At all relevant times, upon information and belief, Defendants have been, and continue to be, "employers" engaged in interstate "commerce" and/or in the production of "goods" for "commerce," within the meaning of the FLSA, 29 U.S.C. §§206(a) and §§207(a). Further, Plaintiffs are covered within the meaning of FLSA, U.S.C. §§206(a) and 207(a).

216. At all relevant times, Defendants employed "employees" including Plaintiffs, within the meaning of FLSA.

217. Upon information and belief, at all relevant times, Defendants have had gross revenues in excess of $500,000.

218. The FLSA provides that any employer engaged in commerce shall pay employees the applicable minimum wage. 29 U.S.C. § 206(a).

219. At all relevant times, Defendants had a policy and practice of refusing to pay the statutory minimum wage to Plaintiffs, and the collective action members, for some or all of the hours they worked.

220. The FLSA provides that any employer who violates the provisions of 29 U.S.C. §206 shall be liable to the employees affected in the amount of their unpaid minimum compensation, and in an additional equal amount as liquidated damages.

221. Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by failing to compensate Plaintiffs and Collective Class Members at the statutory minimum wage when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

## COUNT II
### [Violation of New York Labor Law—Minimum Wage
### Brought on behalf of the Plaintiffs, and the Class]

222. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

223.    At all relevant times, Plaintiffs were employed by Defendants within the meaning of New York Labor Law §§2 and 651.

224.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay the minimum wage shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such under-payments found to be due the employee.

225.    Defendants knowingly and willfully violated Plaintiffs' and Class Members' rights by failing to pay them minimum wages in the lawful amount for hours worked.


# COUNT III

## [Violations of the Fair Labor Standards Act—Overtime Wages, Brought on behalf of the Plaintiffs, and the FLSA Collective]

226.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

227.    The FLSA provides that no employer engaged in commerce shall employ a covered employee for a work week longer than forty (40) hours unless such employee receives compensation for employment in excess of forty (40) hours at a rate not less than one and one-half times the regular rate at which he or she is employed, or one and one-half times the minimum wage, whichever is greater. 29 U.S.C. §207(a).

228.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. §207 shall be liable to the employees affected in the amount of their unpaid overtime compensation, and in an additional equal amount as liquidated damages. 29 U.S.C. §216(b).

229.    Defendants violated the FLSA by failing to compensate Plaintiffs, the FLSA Collective, and the Class for overtime hours.

230.    At all relevant times, Defendants had, and continue to have, a policy and/or practice of refusing to pay overtime compensation at the statutory rate of time and a half to

Plaintiffs and Collective Action Members for all hours worked in excess of forty (40) hours per workweek, which violated and continues to violate the FLSA, 29 U.S.C. §§201, et seq., including 29 U.S.C. §§207(a)(1) and 215(a).

231.    The FLSA and supporting regulations required employers to notify employees about the employer's mandatory responsibilities under federal employment law. 29 C.F.R. §516.4.

232.    Defendants willfully failed to notify Plaintiffs and FLSA Collective of the requirements of the employment laws in order to facilitate their exploitation of Plaintiffs' and FLSA Collectives' labor.

233.    Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs, the Collective Action Members, and the Class Members at the statutory overtime rate of time and one half for all hours worked in excess of forty (40) per week when they knew or should have known such was due and that failing to do so would financially injure Plaintiffs and Collective Action members.

**COUNT IV**

**[Violation of New York Labor Law—Overtime Pay**
**Brought on behalf of the Plaintiffs, and the Class]**

234.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

235.    Pursuant to the New York Wage Theft Prevention Act, an employer who fails to pay proper overtime compensation shall be liable, in addition to the amount of any underpayments, for liquidated damages equal to the total of such underpayments due to the employee.

236.    Defendants' failure to pay overtime compensation to the Plaintiffs, the Collective Action Members, and the Rule 23 Class violated the NYLL.

237.    Defendants' failure to pay Plaintiffs, the Collective Action Members, and the Rule 23 Class was not in good faith.

## COUNT V

**[Violation of New York Labor Law—Time of Hire Wage Notice Requirement**
**Brought on behalf of the Plaintiffs, and the Class]**

238.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

239.    The NYLL and supporting regulations require employers to provide written notice of the rate or rates of pay and the basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as a part of minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer.  NYLL §195-1(a).

240.    Defendants intentionally failed to provide notice to employees in violation of New York Labor Law § 195, which requires all employers to provide written notice in the employee's primary language about the terms and conditions of employment related to rate of pay, regular pay cycle and rate of overtime on his or her first day of employment.

241.    Defendants not only failed to provide notice to each employee at Time of Hire, but also failed to provide notice to each Plaintiff even after the fact.

242.    Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $50 for each workday that the violation occurred or continued to occur, up to $5,000, together with costs and attorneys' fees pursuant to New York Labor Law. N.Y. Lab. Law §198(1-b).

## COUNT VI

**[Violation of New York Labor Law—New York Pay Stub Requirement**
**Brought on behalf of the Plaintiffs, and the Class]**

243.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

244.     The NYLL and supporting regulations require employers to provide detailed paystub information to employees every payday. NYLL §195-1(d).

245.     Defendants have failed to make a good faith effort to comply with the New York Labor Law with respect to compensation of each Plaintiff, and did not provide the paystub on or after each Plaintiff' payday.

246.     Due to Defendants' violations of New York Labor Law, each Plaintiff is entitled to recover from Defendants, jointly and severally, $250 for each workday of the violation, up to $5,000 for each Plaintiff together with costs and attorneys' fees pursuant to New York Labor Law N.Y. Lab. Law §198(1-d).

## COUNT VII
### [New York Human Rights Law – Sex Discrimination]

247.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

248.     By their conduct and that of their employees and agents above, the Defendants' policy and/or practice of paying female employees less than similarly situated male employees constitutes unlawful harassment and discrimination against Plaintiffs based on gender, in violation of the New York Human Rights Law, N.Y. Exec. L. 296 (1) (a).

249.     The defendants acted willfully and in deliberate disregard of Plaintiffs' civil rights.

250.     Plaintiffs seek damages against Defendants in an amount to be determined at trial.

## COUNT VIII
### [New York City Human Rights Law – Sex Discrimination]

251.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

252.     By their conduct and that of their employees and agents above, the Defendants' policy and/or practice of paying female employees less than similarly situated male employees constitutes unlawful harassment and discrimination against Plaintiffs based on gender, in violation of the New York City Human Rights Law, N.Y.C.A.C 8-107(1)(a).

253.     The defendants acted willfully and in deliberate disregard of Plaintiffs' civil rights.

254.     Plaintiffs seek damages against Defendants in an amount to be determined at trial.

**COUNT IX**
**[Hostile Work Environment Based on Sex in Violation of**
**New York State Human Rights Law]**

255.     Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

256.     Pursuant to the unlawful acts and practices of Defendants as alleged above, Plaintiffs were subjected to an abusive workplace permeated with harassment and discrimination that was sufficiently severe or pervasive to alter the conditions of her work environment during her employment with Defendant.

257.     Defendant knew or should have known of the unlawful acts and practices as alleged above and the hostile work environment created thereby, yet failed to act promptly to prevent or end the harassment and discrimination.

258.     As a proximate result of Defendants' unlawful acts and practices as alleged above, Plaintiffs have suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for *inter alia*, mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

259.     Defendants acted with malice and/or with reckless disregard of Plaintiffs' statutorily protected civil rights, and, as such, Defendants should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## COUNT X
### [Hostile Work Environment Based on Sex in Violation of
### New York City Human Rights Law]

260.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

261.     Pursuant to the unlawful acts and practices of Defendants as alleged above, Plaintiffs were subjected to an abusive workplace permeated with harassment and discrimination that was sufficiently severe or pervasive to alter the conditions of her work environment during her employment with Defendants.

262.     Defendants knew or should have known of the unlawful acts and practices as alleged above and the hostile work environment created thereby, yet failed to act promptly to prevent or end the harassment and discrimination.

263.     As a proximate result of Defendants' unlawful acts and practices as alleged above, Plaintiffs have suffered and continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for *inter alia*, mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

264.     Defendants acted with malice and/or with reckless disregard of Plaintiffs' statutorily protected civil rights, and, as such, Defendants should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## COUNT XI
### [New York Human Rights Law – Race Discrimination]

265. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

266. By their conduct and that of their employees and agents above, the Defendants' policy and/or practice of routinely verbally degrading Plaintiffs for being Latino constitutes unlawful harassment and discrimination against Plaintiffs based on race, in violation of the New York Human Rights Law, N.Y. Exec. L. 296 (1) (a).

267. The defendants acted willfully and in deliberate disregard of Plaintiffs' civil rights.

268. Plaintiffs seek damages against Defendants in an amount to be determined at trial.

**COUNT XII**
**[New York City Human Rights Law – Race Discrimination]**

269. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

270. By their conduct and that of their employees and agents above, the Defendants' policy and/or practice of routinely verbally degrading Plaintiffs for being Latino constitutes unlawful harassment and discrimination against Plaintiffs based on race, in violation of the New York City Human Rights Law, N.Y.C.A.C 8-107(1)(a).

271. The defendants acted willfully and in deliberate disregard of Plaintiffs' civil rights.

272. Plaintiffs seek damages against Defendants in an amount to be determined at trial.

**COUNT XIII**
**[New York City Human Rights Law – Emotional Distress]**

273. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

274. Pursuant to the unlawful acts and practices of Defendant as alleged above, Plaintiff was subjected to an abusive workplace permeated with harassment and discrimination that was

sufficiently severe or pervasive to alter the conditions of her work environment during her employment with Defendant.

275. Defendant knew or should have known of the unlawful acts and practices as alleged above and the hostile work environment created thereby, yet failed to act promptly to prevent or end the harassment and discrimination.

276. As a proximate result of Defendant's unlawful acts and practices as alleged above, Plaintiff has suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for, *inter alia*, mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

277. Defendant acted with malice and/or with reckless disregard of Plaintiffs' statutorily protected civil rights, and, as such, Defendant should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## COUNT XIV
### [Hostile Work Environment Based on Race and National Origin in Violation of New York State Human Rights Law.]

278. Plaintiffs re-allege and incorporates by reference all preceding paragraphs as though fully set forth herein.

279. Pursuant to the unlawful acts and practices of Defendants as alleged above, Plaintiffs were subjected to an abusive workplace permeated with harassment and discrimination that was sufficiently severe or pervasive to alter the conditions of her work environment during her employment with Defendant.

280. Defendant knew or should have known of the unlawful acts and practices as alleged above and the hostile work environment created thereby, yet failed to act promptly to prevent or end the harassment and discrimination.

281. As a proximate result of Defendants' unlawful acts and practices as alleged above, Plaintiffs have suffered and continues to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for *inter alia*, mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

282. Defendants acted with malice and/or with reckless disregard of Plaintiffs' statutorily protected civil rights, and, as such, Defendants should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

**COUNT XV**
**[Hostile Work Environment Based on Race and National Origin in Violation of**
**New York City Human Rights Law.]**

283. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

284. Pursuant to the unlawful acts and practices of Defendants as alleged above, Plaintiffs were subjected to an abusive workplace permeated with harassment and discrimination that was sufficiently severe or pervasive to alter the conditions of her work environment during her employment with Defendants.

285. Defendants knew or should have known of the unlawful acts and practices as alleged above and the hostile work environment created thereby, yet failed to act promptly to prevent or end the harassment and discrimination.

286. As a proximate result of Defendants' unlawful acts and practices as alleged above, Plaintiffs have suffered and continue to suffer substantial losses, including loss of past and future earnings and other employment benefits, and is entitled to monetary and compensatory damages for *inter alia*, mental anguish, severe and lasting embarrassment, emotional distress, humiliation and loss of reputation.

287.     Defendants acted with malice and/or with reckless disregard of Plaintiffs' statutorily protected civil rights, and, as such, Defendants should be subjected to punitive damages to deter future unlawful conduct similar to the conduct alleged herein.

## COUNT XVI
### [New York Labor Law Article 6 – Failure to Pay Agreed-Upon Wages]

288.     Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

289.     Defendants have engaged in a pattern, practice, and policy of failing to compensate Plaintiffs Francisco Martinez and Edwin Bustillo at their agreed hourly regular rate of $15 for all hours either worked or required to be compensated.

290.     Defendants' failure to pay Plaintiffs their wages at their agreed hourly regular rates for all hours worked or required to be compensated by law violates the New York Labor Law Article 6, §§ 190 et seq.

291.     Due to Defendants' violations of New York Labor Law, Plaintiffs is entitled to recover from Defendants their unpaid wages, pre-judgment and post-judgment interest, reasonable attorneys' fees, and the costs of the action, pursuant to New York Labor Law Article 6, § 198.

### Prayer For Relief

WHEREFORE, Plaintiffs, on behalf of themselves, and the FLSA collective Plaintiffs and rule 23 class, respectfully request that this court enter a judgment providing the following relief:

a)     Authorizing Plaintiffs at the earliest possible time to give notice of this collective action, or that the court issue such notice, to all persons who are presently, or have been employed by defendants as non-exempt tipped or non-tipped employees. Such notice shall inform them that the civil notice has been filed, of the nature of the action, of their right to join this lawsuit if they believe they were denied proper hourly compensation and premium overtime wages;

b)      Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

c)      Designation of Plaintiffs as representatives of the Rule 23 Class, and counsel of record as Class counsel;

d)      Certification of this case as a collective action pursuant to FLSA;

e)      Issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the FLSA opt-in class, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims and state claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b), and appointing Plaintiffs and their counsel to represent the Collective Action Members;

f)      A declaratory judgment that the practices complained of herein are unlawful under FLSA and New York Labor Law;

g)      An injunction against Corporate Defendant, its officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of unlawful practices and policies set forth herein;

h)      An award of unpaid wages and overtime premium due Plaintiffs and the Collective Action members under the FLSA and New York Labor Law, plus compensatory and liquidated damages in the amount of twenty five percent under NYLL §§190 et seq., §§650 et seq., and one hundred percent after April 9, 2011 under NY Wage Theft Prevention Act, and interest;

i)      An award of unpaid overtime wages due under FLSA and New York Labor Law;

j)      An award of damages for Defendants' failure to provide wage notice at the time of hiring as required under the New York Labor Law.

k)      An award of liquidated and/or punitive damages as a result of Defendants' knowing

and willful failure to pay overtime compensation pursuant to 29 U.S.C. §216;

l)      An award of liquidated and/ or punitive damages as a result of Defendants' willful failure to pay wages, overtime compensation, and spread of hours premium pursuant to New York Labor Law;

m)      An award of costs and expenses of this action together with reasonable attorneys' and expert fees pursuant to 29 U.S.C. §216(b) and NYLL §§198 and 663;

n)      The cost and disbursements of this action;

o)      An award of prejudgment and post-judgment fees;

p)      Providing that if any amounts remain unpaid upon the expiration of ninety days following the issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL §198(4); and

q)      Awarding Plaintiff compensatory damages and all other appropriate relief under the NYHRL;

r)      Awarding compensatory damages, punitive damages, attorneys' fees, and all other appropriate relief under the NYCHRL;

s)  Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated: February 28, 2017
     Flushing, NY

HANG & ASSOCIATES, PLLC.

*/S JIAN HANG*
_____

Jian Hang, Esq.
136-18 39th Ave., Suite 1003
Flushing, New York 11354
Tel: 718.353.8588
jhang@hanglaw.com
*Attorneys for Plaintiffs*

# **<u>EXHIBIT 1</u>**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**
*CONSENTIMIENTO PARA DEMANDAR SEGÚN LA LEY DE NORMAS JUSTAS DE TRABAJO*

I am an employee currently or formerly employed by Top "N" Quality Cleaners, located at 42-16 43rd Avenue, Sunnyside, NY 11104, and/or of related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Yo soy o era un(a) empleado/a de Top "N" Quality Cleaners, localizada en 42-16 43rd Avenue, Sunnyside, NY 11104, y / o de entidades relacionadas. Consiento ser demandante en una demanda para cobrar los salarios no remunerados. Estoy de acuerdo de que quedo obligado por los términos del Acuerdo de Retención Contingente firmado por el demandante nombrado en este caso.

*Angel Duchi Tanga*

Nombre y apellido legales (Letras de imprenta)

Firma

Date

# **EXHIBIT 2**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**
*CONSENTIMIENTO PARA DEMANDAR SEGÚN LA LEY DE NORMAS JUSTAS DE TRABAJO*

I am an employee currently or formerly employed by Top "N" Quality Cleaners, located at 42-16 43rd Avenue, Sunnyside, NY 11104, and/or of related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Yo soy o era un(a) empleado/a de Top "N" Quality Cleaners, localizada en 42-16 43rd Avenue, Sunnyside, NY 11104, y / o de entidades relacionadas. Consiento ser demandante en una demanda para cobrar los salarios no remunerados. Estoy de acuerdo de que quedo obligado por los términos del Acuerdo de Retención Contingente firmado por el demandante nombrado en este caso.

*Francisco Martinez*
Nombre y apellido legales (Letras de imprenta)

*Francisco Martinez*
Firma

02/30/17
Date

# **EXHIBIT 3**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

*CONSENTIMIENTO PARA DEMANDAR SEGÚN LA LEY DE NORMAS JUSTAS DE TRABAJO*

I am an employee currently or formerly employed by Top "N" Quality Cleaners, located at 42-16 43rd Avenue, Sunnyside, NY 11104, and/or of related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Yo soy o era un(a) empleado/a de Top "N" Quality Cleaners, localizada en 42-16 43rd Avenue, Sunnyside, NY 11104, y / o de entidades relacionadas. Consiento ser demandante en una demanda para cobrar los salarios no remunerados. Estoy de acuerdo de que quedo obligado por los términos del Acuerdo de Retención Contingente firmado por el demandante nombrado en este caso.

Luis Juncal

Nombre y apellido legales (Letras de imprenta)

Firma

02/01/2017

Date

# **EXHIBIT 4**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**

*CONSENTIMIENTO PARA DEMANDAR SEGÚN LA LEY DE NORMAS JUSTAS DE TRABAJO*

I am an employee currently or formerly employed by Top "N" Quality Cleaners, located at 42-16 43rd Avenue, Sunnyside, NY 11104, and/or of related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Yo soy o era un(a) empleado/a de Top "N" Quality Cleaners, localizada en 42-16 43rd Avenue, Sunnyside, NY 11104, y / o de entidades relacionadas. Consiento ser demandante en una demanda para cobrar los salarios no remunerados. Estoy de acuerdo de que quedo obligado por los términos del Acuerdo de Retención Contingente firmado por el demandante nombrado en este caso.

ESTELA PEREZ
Nombre y apellido legales (Letras de imprenta)

Firma

1/31/17
Date

# **EXHIBIT 5**

**CONSENT TO SUE UNDER**
**FEDERAL FAIR LABOR STANDARDS ACT**
*CONSENTIMIENTO PARA DEMANDAR SEGÚN LA LEY DE NORMAS JUSTAS DE TRABAJO*

I am an employee currently or formerly employed by Top "N" Quality Cleaners, located at 42-16 43rd Avenue, Sunnyside, NY 11104, and/or of related entities. I consent to be a plaintiff in an action to collect unpaid wages. I agree that I am bound by the terms of the Contingent Fee Retainer signed by the named plaintiff in this case.

Yo soy o era un(a) empleado/a de Top "N" Quality Cleaners, localizada en 42-16 43rd Avenue, Sunnyside, NY 11104, y / o de entidades relacionadas. Consiento ser demandante en una demanda para cobrar los salarios no remunerados. Estoy de acuerdo de que quedo obligado por los términos del Acuerdo de Retención Contingente firmado por el demandante nombrado en este caso.

_Edwin Bustillo_
Nombre y apellido legales (Letras de imprenta)

_Edwin Bustillo_
Firma

_12 / 8 / 2012_
Date

# **EXHIBIT 6**

## NOTICE OF INTENTION TO ENFORCE SHAREHOLDER LIABILITY
## FOR SERVICES RENDERED

TO:  SANG HUN KIM, JAE HEE SIM, EDWARD S. LEE, CHARLIE "DOE" (LAST NAME UNKNOWN), THOMAS "DOE" (LAST NAME UNKNOWN), "JOHN" (FIRST NAME UNKNOWN PACK), "JOHN" (FIRST NAME UNKNOWN) KIM, AND "JOHN" (FIRST NAME UNKNOWN) JONG

      PLEASE TAKE NOTICE, that pursuant to the provisions of Section 630 of the Business Corporation Law of New York, you are hereby notified that ANGEL DUCHITANGA, FRANCISCO MARTINEZ, LUIS JUNCAL, ESTELA PEREZ, EDWIN BUSTILLO, and others similarly situated intend to charge you and hold you personally liable, jointly and severally, as one of the ten largest shareholders of SUNNY CLEANERS INC., CLEANTECH 47 INC., SUN CLEANERS INC., and THE 43 AVE TOP N' QUALITY CORPORATION, and YSB CLEANERS, INC.  for all debts, wages, and/or salaries due and owing to them as laborers, servants and/or employees of the said corporations for services performed by them for the said corporations within the six (6) years preceding the date of this notice and have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.


      Dated: February 28, 2017

# **EXHIBIT 7**

**DEMAND BY EMPLOYEES TO INSPECT SHARE RECORDS AND MINUTES PURSUANT TO SECTION 624 OF THE NEW YORK STATE BUSINESS CORPORATION LAW**

TO:    The 43 Ave Top N' Quality Corporation
42-16 43rd Ave.
Sunnyside, NY 11104

Sunny Cleaners, Inc.
42-16 43rd Ave.
Sunnyside, NY 11104

Sun Cleaners, Inc.
47 Columbia Street
New York, NY, 10002

YSB Cleaners, Inc.
 4924 Fort Hamilton Parkway
Brooklyn, NY 11219

      PLEASE TAKE NOTICE, that ANGEL DUCHITANGA, FRANCISCO MARTINEZ, LUIS JUNCAL, ESTELA PEREZ, EDWIN BUSTILLO, and others similarly situated as employees of the above corporations who intend to demand, pursuant to the provisions of Section 630 of the Business Corporation Law of New York, payment of debts, wages and/or salaries due and owing to them as laborers, servants and/or employees of the above corporations for services performed by them for the above corporations within the six (6) years preceding the date of this notice from the ten largest shareholders of the above corporations, and who have expressly authorized the undersigned, as their attorney, to make this demand on their behalf.

      HEREBY DEMAND the right to examine, in person or by agent or attorney, during usual business hours, the minutes of the proceedings of the shareholders and records of shareholders of the above corporations and to make extracts therefrom on or after five (5) days from receipt of this notice.

      Dated: February 28, 2017