UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
ANGEL DUCHITANGA, *et al.*,

                        **Plaintiffs,**

        -against-

THE 43 AVE TOP N' QUALITY CORPORATION
d/b/a TOP & QUALITY CLEANERS, *et al.*,

                     **Defendants.**
----------------------------------------------------------------x

**AMENDED
REPORT AND
RECOMMENDATION**

**17-CV-1145-LDH-RLM**

ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:

In this wage-and-hour action, plaintiffs Angel Duchitanga, Luis Juncal, and Estela

Perez (collectively, "plaintiffs") sue their former employers, defendants The 43 Ave Top N'

Quality Corporation ("43 Ave") and Sunny Cleaners, Inc. ("Sunny") (collectively,

"defendants"), to recover for deficiencies in their wage payments, and for related damages.

See generally Second Amended Complaint (Sept. 27, 2019) ("SAC"), Electronic Case Filing

("ECF"), Docket Entry ("DE") #41.[1]  Currently pending before this Court, on a referral from

---

[1] Two additional plaintiffs – Francisco Martinez and Edwin Bustillo – are named in the Second Amended Complaint, see SAC at 1, but the Notice of Motion for Default Judgment omits plaintiff Martinez, see Motion for Default Judgment (Mar. 18, 2021) ("Pl. Mot.") at 1, DE #52, whereas the substance of plaintiffs' accompanying memorandum requests default judgment only on behalf of plaintiffs Duchitanga, Juncal, and Perez, see, e.g., Memorandum of Law in Support of Motion for Default Judgment (Mar. 18, 2021) ("Pl. Mem.") at 1, DE #57. On August 31, 2021, this Court issued an order instructing plaintiffs' counsel to provide a detailed explanation as to why they are not pursuing the claims of all five plaintiffs, and why they failed to alert the Court as to the apparent abandonment of the claims of plaintiffs Martinez and Bustillo.  See Order (Aug. 31, 2021).  On the same day, plaintiffs' counsel filed a response to the Court's inquiry, stating that plaintiffs Martinez and Bustillo have declined to proceed with their claims against defendants.  See Letter *re* Court Order dated 8/31/21 (Aug. 31, 2021), DE #63.  Accordingly, the Court addresses plaintiffs' request for default judgment only as to plaintiffs Duchitanga, Juncal, and Perez.

    In addition, although the Second Amended Complaint is styled as a putative collective action, plaintiffs never moved for conditional certification.

the Honorable LaShann DeArcy Hall, is plaintiffs' motion for default judgment.  See Pl. Mot.;

Order Referring Motion (Mar. 19, 2021).

For the forthcoming reasons, this Court respectfully recommends that plaintiffs' motion

for default judgment be granted in substantial part, to the extent detailed below.

## BACKGROUND

Plaintiffs' Second Amended Complaint seeks damages from defendants for their failure

to pay overtime wages pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (the

"FLSA"), see SAC Count II, and the New York Labor Law § 650 *et seq.* (the "NYLL"), see

SAC Count III; failure to pay minimum wages pursuant to the NYLL, see SAC Count I; and

failure to provide wage notices and wage statements under the NYLL's Wage Theft Prevention

Act, N.Y. Lab. Law §§ 195(1)(a), 195(3), (the "WTPA"), see SAC Counts IV-V.[2]  Plaintiffs

served copies of the Second Amended Complaint on defendants through the Secretary of State

on October 15, 2019.[3]  See SAC Affidavits of Service (Nov. 20, 2019) ("SAC Aff. of

Service") at 6-7, DE #42-1.  Following defendants' failure to timely respond to the Second

Amended Complaint, plaintiffs requested that a certificate of default be entered against 43 Ave

and Sunny, see Request for Certificate of Default (Mar. 5, 2021), DE #49, and the Clerk of

the Court thereafter entered a notation of default, see Clerk's Entry of Default (Mar. 11,

2021), DE #51.  Plaintiffs moved for default judgment on March 18, 2021, see Pl. Mot., and

---

[2] As discussed *infra*, plaintiffs have abandoned their claim for wage notice violations.  In addition, although the pleading's introductory paragraphs reference FLSA minimum wage violations and violations of New York's spread-of-hours regulation, see SAC ¶¶ 2-4, the SAC contains no corresponding claims.  Moreover, the pending motion does not pursue any such allegations

[3] Plaintiffs also previously attempted to serve defendants with the original Complaint and the First Amended Complaint.  However, as discussed *infra*, Section II, the Court has identified several service deficiencies with respect to these earlier pleadings.

now request that the Court enter judgment and award damages against 43 Ave and Sunny, jointly and severally, only with respect to plaintiffs' claims for minimum wage violations under the NYLL; overtime wage violations under the FLSA and the NYLL; and failure to provide wage statements under NYLL, see Pl. Mem. at 9-14.

Defendants 43 Ave and Sunny are the former owners of the dry-cleaning business Top N' Quality Cleaners ("Top N' Quality"), located at 42-16 43rd Avenue, Sunnyside, New York (the "Sunnyside address"). See SAC ¶¶ 14, 19. The Second Amended Complaint alleges that 43 Ave owned and operated Top N' Quality from 2002 until October 2015, when Sunny purchased the business from 43 Ave. See id. ¶¶ 14, 19, 30; Pl. Mem. at 4. After the change in ownership, Sunny operated Top N' Quality from October 2015 to approximately 2019.[4] See SAC ¶¶ 19, 31; Pl. Mem. at 4. Plaintiffs Angel Duchitanga, Luis Juncal, and Estela Perez are all former employees of Top N' Quality and worked for the dry-cleaning business while it was operated by each defendant. See SAC ¶¶ 7, 9, 10.

According to the uncontested allegations in the Second Amended Complaint, plaintiff Angel Duchitanga ("Duchitanga") worked as a stock worker and cashier for Top N' Quality from 2002 until his termination on January 31, 2017. See id. ¶ 7; Affidavit of Angel Duchitanga (Mar. 18, 2021) ("Duchitanga Aff.") ¶ 2, DE #54. Duchitanga's responsibilities at Top N' Quality included "cleaning and folding shirts, using washing machines, and using an industrial steam press." See Duchitanga Aff. ¶ 3. From January 1, 2010 through December

---

[4] Based on plaintiffs' representations in their unsuccessful Third Motion to Amend the Complaint, Top N' Quality is no longer owned and operated by Sunny, as of November 2019. See Third Motion to Amend/Correct/ Supplement Amended Complaint (Nov. 20, 2019) ("Pl. Third Mot. to Amend") at 1, DE #42 (representing that a third corporation – KY Cleaners, Inc. – was formed on February 19, 2019, and is registered at the Sunnyside address).

31, 2014, Duchitanga worked a total of six days per week, for a weekly total of 53 hours.[5]

See id. ¶¶ 4, 6; SAC ¶¶ 51, 55.  Beginning on January 1, 2015, and continuing through

January 31, 2017, Duchitanga worked six days per week, for a decreased weekly total of 51

hours.[6]  See Duchitanga Aff. ¶ 8; SAC ¶ 59.

    While employed with defendants at Top N' Quality, the responsibilities of plaintiff

Estela Perez ("Perez") included operating industrial washing machines and an industrial steam

press.  See SAC ¶¶ 10, 87-89; Affidavit of Estela Perez (Mar. 18, 2021) ("Perez Aff.") ¶¶ 2-

3, DE #56.  Perez worked in this capacity from 2006 until her termination on January 7,

2017.[7]  See Perez Aff. ¶ 2; SAC ¶¶ 87-128.  From January 1, 2011 through August 31, 2017,

Perez worked six days each week, for a weekly total of 53 hours.[8]  See Perez Aff. ¶¶ 4, 6, 8,

10, 12; SAC ¶¶ 93, 99, 106, 112, 117, 123.  From September 1, 2016 through January 7,

---

[5] I.e., from 8:00 a.m. to 6:00 p.m. on Mondays and Tuesdays, and from 8:00 a.m. to 5:00 p.m. on Wednesdays through Saturdays.  See Duchitanga Aff. ¶¶ 4, 6; SAC ¶¶ 51, 55.

[6] I.e., from 7:30 a.m. to 5:00 p.m. on Mondays and Tuesdays; from 7:30 a.m. to 4:30 p.m. on Wednesdays through Fridays; and from 8:00 a.m. to 4:00 p.m. on Saturdays.  See Duchitanga Aff. ¶ 8; SAC ¶ 59.

[7] The Court notes that there are inconsistencies in the Second Amended Complaint regarding Perez's employment history.  Specifically, the pleading alleges that Perez worked for Top N' Quality until January 15, 2017, see SAC ¶¶ 10, 128, whereas Perez's sworn statement asserts that she worked until January 7, 2017, see Perez Aff. ¶¶ 14, 16.  In addition, while the pleading alleges that Perez worked for Top N' Quality from at least January 2007 through January 2017, if not earlier, see SAC ¶¶ 87-128, it elsewhere asserts that Perez was not hired until approximately 2015, when Sunny purchased the business, see id. ¶ 33.  The pleading's particularized allegations regarding the various periods of Perez's employment – which are largely confirmed by her affidavit – lead this Court to conclude that paragraph 33 of the Second Amended Complaint is erroneous, and that the resultant inconsistency is a product of sloppy pleading on the part of plaintiffs' counsel.  Accordingly, the Court accepts the Second Amended Complaint's specific allegations regarding Perez's employment history with Top N' Quality, except as to her final date of employment, which her sworn statement specifies was January 7, 2017.

[8] I.e., from 8:00 a.m. to 6:00 p.m. on Mondays and Tuesdays, and from 8:00 a.m. to 5:00 p.m. on Wednesdays through Saturdays.  See Perez Aff. ¶¶ 4, 6, 8, 10, 12; SAC ¶¶ 93, 99, 106, 112, 117, 123.

2017, Perez worked six days per week, for a decreased weekly total of 51 hours.[9]  See Perez Aff. ¶ 14; SAC ¶ 128.

Plaintiff Luis Juncal ("Juncal") worked for Top N' Quality as a steam press operator from 2007 until his termination on January 7, 2017.  See SAC ¶¶ 9, 73-75; Affidavit of Luis Juncal (Mar. 18, 2021) ("Juncal Aff.") ¶¶ 2-3, DE #55.[10]  His work-related responsibilities included cleaning and folding shirts, as well as operating washing machines and an industrial steam press.  See SAC ¶¶ 74-75; Juncal Aff. ¶ 3.  From January 1, 2011 through August 31, 2016, Juncal worked six days per week, for a weekly total of 53 hours.[11]  See SAC ¶ 79; Juncal Aff. ¶ 4; Damages Calculations at 9-11.  From September 1, 2016 through January 7, 2017,[12] Juncal worked six days per week, with a decreased weekly total of 51 hours.[13]  See SAC ¶ 83.

Plaintiffs Duchitanga, Perez, and Juncal were compensated by defendants at flat weekly rates—which fluctuated throughout each plaintiff's employment period—regardless of the

_____

[9] I.e., from 7:30 a.m. to 5:00 p.m. on Mondays and Tuesdays; from 7:30 a.m. to 4:30 p.m. on Wednesdays through Fridays; and from 8:00 a.m. to 4:00 p.m. on Saturday.  See Perez Aff. ¶ 14; SAC ¶ 128.

[10] As with plaintiff Perez, the Second Amended Complaint alleges that Juncal's employment ended on January 15, 2017, see SAC ¶¶ 9, 83, but his sworn statement, which the Court accepts as true, specifies January 7, 2017, as the date he was terminated, see Juncal Aff. ¶¶ 2, 8.

[11] I.e., from 8:00 a.m. to 6:00 p.m. on Mondays and Tuesdays, and from 8:00 a.m. to 5:00 p.m. on Wednesdays through Saturdays.  See SAC ¶ 79; Juncal Aff. ¶ 4; Top N' Quality Cleaners Damages Calculations (Mar. 18, 2021) ("Damages Calculations") at 9-10, DE #53-3.

[12] In his affidavit, Juncal fails to account for his weekly work schedule from September 1, 2016 through November 6, 2016.  See Juncal Aff.  The Second Amended Complaint, however, sets forth Juncal's weekly schedule throughout the entirety of his alleged employment with Top N' Quality.  See SAC ¶¶ 78-83.  As such, the Court credits the allegations in the Second Amended Complaint regarding his schedule and continuous employment, given that they are consistent with plaintiffs' allegations and Juncal's averment that he was employed by defendants from 2007 until January 2017.  See id. ¶¶ 73-83; Juncal Aff. ¶ 2.

[13] I.e., from 7:30 a.m. to 5:00 p.m. on Mondays and Tuesdays; from 7:30 a.m. to 4:30 p.m. on Wednesdays through Fridays; and from 8:00 a.m. to 4:00 p.m. on Saturdays.  See SAC ¶ 83.

number of hours of work performed.  See SAC ¶¶ 52, 56, 60, 80, 84, 94, 100, 177; see also Pl. Mem. at 5.

Plaintiffs claim that defendants willfully violated the FLSA by failing to pay them overtime premiums and violated the NYLL by failing to pay them minimum and overtime wages.  See SAC ¶¶ 2, 96, 103, 109, 120, 134, 165, 169, 177-178; Duchitanga Aff. ¶¶ 5, 7, 9, 13; Perez Aff. ¶¶ 5, 7, 9, 11, 13, 15, 19; Juncal Aff. ¶¶ 5, 7, 9, 11; Pl. Mem. at 9-12; Damages Calculations.  Additionally, plaintiffs allege that defendants further violated the NYLL in failing to provide them with any wage statements.  See SAC ¶¶ 2, 49, 76, 90; Pl. Mem. at 12.  Finally, plaintiffs allege that, under a theory of successor liability, Sunny is jointly and severally liable for 43 Ave's violations of the FLSA and the NYLL.  See SAC ¶¶ 30-37; Pl. Mem. at 4-5; Memorandum of Law in Further Support (May 6, 2021) ("Pl. Supp.") at 1-2, DE #61.[14]

Following Judge DeArcy Hall's referral of the motion for default judgment to the undersigned magistrate judge, this Court issued an order directing plaintiffs to file, by May 6, 2021, supplemental submissions addressing whether they intend to pursue a theory of joint-and-several liability and whether they intend to pursue any claims regarding plaintiffs' wage-notice violations.  See Order (Apr. 22, 2021) ("April Order"), DE #60.  Plaintiffs were further instructed to serve defendants with a copy of the April Order, and to file proof of service.  See id.  In the same order, the Court instructed defendants to respond to plaintiffs'

---

[14] Although plaintiffs contend that "[d]efendants are jointly and severally liable to [p]laintiffs for the claims asserted in this matter," Pl. Mem. at 5; see, e.g., generally, SAC ¶¶ 164, 174, 181, and their calculations of damages fail to distinguish between those due from each corporate defendant, see, e.g., Pl. Mem. at 17, plaintiffs articulate no legal basis for holding 43 Ave responsible for the damages resulting from wage-and-hour violations committed by Sunny after 43 Ave sold the business to Sunny.

supplemental submissions and to show cause, by May 20, 2021, as to why the relief requested

by plaintiffs should not be granted.  See id.  Thereafter, plaintiffs timely supplemented their

motion papers, see Pl. Supp., and submitted proof of service of the April Order on defendants,

see Certificate of Service (May 6, 2021), DE #62, but, to date, neither 43 Ave nor Sunny has

responded, or otherwise appeared in this action.

## DISCUSSION

### I.    Applicable Legal Standard – Default Judgment

After the Clerk of the District Court enters a Certificate of Default, the District Court

may, on a plaintiff's application, enter a default judgment if a defendant "has failed to plead or

otherwise defend" an action.  See Fed. R. Civ. P. 55(a), (b); see also S.D.N.Y./E.D.N.Y.

Local Civ. R. 55.2(b).  A defendant's default ordinarily constitutes an admission of all well-

pleaded factual allegations in the complaint, except those relating to damages.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Au Bon Pain

Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981); see also City of New York v. Mickalis

Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011); Fed. R. Civ. P. 8(b)(6).

This principle is, however, subject to several exceptions and limitations.  First, a

pleading's legal conclusions are not assumed to be true, and, on a motion for default judgment,

the factual allegations in the complaint must themselves be sufficient to establish a right to

relief.  See Chen v. JP Standard Constr. Corp., No. 14-CV-1086 (MKB), 2016 WL 2909966,

at *4 (E.D.N.Y. Mar. 18, 2016), adopted, 2016 WL 2758272 (E.D.N.Y. May 12, 2016)

(citing Stein v. Valentine & Kebartas, Inc., No. 10 CV 2465(RJD), 2012 WL 1416924, at *4-

5 (E.D.N.Y. Mar. 15, 2012)); see also Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009)

(district court is "required to determine whether the [plaintiff's] allegations establish [defendant's] liability as a matter of law"). Nor will a complaint's factual allegations be considered "well-pleaded" where they are "contrary to the uncontroverted material in the file of the case[.]" Chuchuca v. Creative Customs Cabinets Inc., No. 13-CV-2506 (RLM), 2014 WL 6674583, at *5 (E.D.N.Y. Nov. 25, 2014) (quoting Trans World Airlines v. Hughes, 449 F.2d 51, 63 (2d Cir. 1971), rev'd on other grounds, 409 U.S. 363 (1973)); see Getty Images (US) Inc. v. Advernet, Inc., 797 F.Supp.2d 399, 439 (S.D.N.Y. 2011). Moreover, the damages amount pleaded by a plaintiff is not deemed to be established by the default; the Court must conduct "an inquiry in order to ascertain the amount of damages with reasonable certainty." Credit Lyonnais Sec. (USA), Inc. v. Alcantara, 183 F.3d 151, 155 (2d Cir. 1999) (citing Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997)). It is within a court's discretion to determine whether the plaintiff's burden has been met, and whether to hold an evidentiary hearing. See Action S.A. v. Marc Rich & Co., Inc., 951 F.2d 504, 508 (2d Cir. 1991).

## II.    Service of the Complaint

Rule 4 of the Federal Rules of Civil Procedure permits service on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . ." Fed. R. Civ. P. 4(h)(1)(B). Rule 4 also permits service on a corporation in any manner authorized by the law of the forum state. See id. 4(e)(1), 4(h)(1)(A). New York law provides for service of process on a corporation through New York's Secretary of State, who then forwards a copy of the documents to the corporation at the address on file with the

Department of State for that purpose. See N.Y. Bus. Corp. Law § 306(b)(1). As such, "[i]n New York, the business corporation law requires that corporations like [43 Ave and Sunny] register with . . . and authorize the Secretary to State to accept legal process . . . ." Trs. of the Local 531 Pension Fund v. Am. Indus. Gases, Inc., 708 F.Supp.2d 272, 276 (E.D.N.Y. 2010) (citation omitted). Accordingly, where a corporation is served through the Secretary of State, who then mails the documents to an address where the corporation is no longer located, service is nevertheless proper if the corporation failed to update its address. See id.

In the instant action, plaintiffs have filed, and attempted to serve, three different complaints upon defendants as detailed below. First, plaintiffs filed the original Complaint on February 28, 2017. See Complaint (Feb. 28, 2017) ("Compl."), DE #1. On August 14, 2017, plaintiffs filed an affidavit of service for 43 Ave and Sunny, purporting to have served these defendants at the Sunnyside address on March 3, 2017. See Compl. Affidavits of Service (Apr. 14, 2017) ("Compl. Aff. of Service") at 2-3, DE #6. According to the affidavits of service, service on behalf of both defendants was allegedly made by delivering the summons and complaint to an individual named "Kim Jaekop," who purported to be the manager of Top N' Quality. See id. However, Kim Jaekop is not listed with the Secretary of State as the registered agent for either 43 Ave or Sunny, and there is no mention of this person as the manager of either corporation in the Second Amended Complaint. See SAC. To the contrary, plaintiffs allege that Top N' Quality was managed first by Sang Hun Kim (the owner of 43 Ave) and then by Jae Hee Sim (the owner of Sunny), as well as by a Charlie Doe following the business's change in ownership. See id. ¶¶ 31-33 ("Jae Hee Sim assumed the role of Sang Hun Kim and managed the day-to-day operations of Top N' Quality. Around the same time,

Jae Hee Sim installed Charlie 'Doe' as a manager for the dry-cleaning business[.]").  Because plaintiffs' method of service of the original Complaint does not comport with Rule 4 and seems unlikely to have provided defendants with notice, the Court concludes that the initial service of process was ineffective.

Plaintiffs subsequently filed their First Amended Complaint on August 2, 2018.  See First Amended Complaint (Aug. 2, 2018) ("FAC"), DE # 22.  On August 14, 2018, plaintiffs filed affidavits of service purporting to have served defendants at the Sunnyside address on August 9, 2018, by serving a "John Smith," who was identified as knowing 43 Ave and Sunny to be the defendants described in the First Amended Complaint.  See FAC Affidavit of Service for 43 Ave (Aug. 14, 2018) ("43 Ave FAC Aff. of Service"), DE #25; FAC Affidavit of Service for Sunny (Aug. 14, 2018) ("Sunny FAC Aff. of Service"), DE #26.  This method of service plainly does not comport with Rule 4, see Fed. R. Civ. P. 4; indeed, plaintiffs appear to concede that the First Amended Complaint was improperly served, see Pl. Mem. at 3 (asserting only that the Complaint and the Second Amended Complaint were properly served).  Thus, the Court concludes that plaintiffs also failed to properly effect service of the First Amended Complaint on 43 Ave and Sunny.

Finally, plaintiffs filed the operative Second Amended Complaint on September 27, 2019, and, on October 15, 2019, plaintiffs successfully served defendants through the New York Secretary of State, see SAC Aff. of Service at 6-7, who presumably forwarded copies to the Sunnyside address, which is the last address each defendant registered with the Secretary of State.  While 43 Ave and/or Sunny may no longer have been operating at this address at the time of service, service is nevertheless considered proper given that neither defendant updated

this address, as required by law.  See Am. Indus. Gases, Inc., 708 F.Supp.2d at 276.

Accordingly, plaintiffs properly effected service of the Second Amended Complaint.

## III.    Statute of Limitations

"Since the FLSA [and] NYLL . . . are compensatory in nature, double recovery may

result if unpaid wages are awarded for the same hours worked under both the federal and the

state laws."  Hernandez v. NJK Contractors, Inc., No. 09–CV–4812 (RER), 2015 WL

1966355, at *32 (E.D.N.Y. May 1, 2015) (citation omitted).  "The statute of limitations for

each claim will thus dictate under which law a claimant will be entitled to recovery."  Id.

Plaintiffs assert that the earliest date from which they can recover against defendants for

damages arising under the FLSA and the NYLL is February 28, 2014, and February 28, 2011,

respectively.[15]  See Pl. Mem. at 8-9.  Plaintiffs base their calculation on the filing date of the

original Complaint and commencement of the action, February 28, 2017.  See id.

The FLSA contains a two-year statute of limitations for non-willful violations, and a

three-year statute of limitations for willful violations.  See 29 U.S.C. § 255(a).  "When a

defendant defaults, the violation is considered 'willful' and the three year statute of limitations

applies."  Rodriguez v. Queens Convenience Deli Corp., No. 09-cv-1089(KAM)(SMG), 2011

WL 4962397, at *2 (E.D.N.Y. Oct. 18, 2011) (citation omitted); see also Gunawan v. Sake

Sushi Rest., 897 F.Supp.2d 76, 87 (E.D.N.Y. 2012).  Because defendants have defaulted, a

three-year statute of limitations is applicable here.

---

[15] Plaintiffs' motion erroneously calculates the earliest date from which plaintiffs may recover damages under the FLSA as February 28, 2011, despite purporting to apply the correct three-year statute of limitations.  See Pl. Mem. at 9 ("As such, applying a three-year statute of limitations, [p]laintiffs' FLSA claims before February 28, 2011 is barred as the original complaint was filed on February 28, 2017.").

11

Under the FLSA, "an action is commenced as to an individual employee on the date when the complaint is filed if he is specifically named as a party plaintiff in the complaint . . . ." Hernandez, 2015 WL 1966355, at *32 (quotation marks and citation omitted); see also Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court"). "The [FLSA] statute of limitations begins to run as soon as the claim for unpaid wages or overtime accrues . . . ." Abdrabo v. State of New York - Worker Comp. Bd., No. 03 Civ. 7690(DLC), 2005 WL 1278539, at *2 (S.D.N.Y. May 27, 2005) (internal citation omitted). A FLSA claim "accrues on the regular payday immediately following the work period for which services were rendered and not properly compensated." Hernandez, 2015 WL 1966355, at *32 (citing Doo Nam Yang v. ACBL Corp., 427 F.Supp.2d 327, 337 (S.D.N.Y. 2005)). Accordingly, the two- or three-year statute of limitations is calculated based on, and runs back from, the date on which the complaint is filed. See, e.g., Jian Hua Li v. Chang Lung Grp. Inc., 16-CV-6722 (PK), 2020 WL 1694356, at *7 (E.D.N.Y. Apr. 7, 2020); see also Perez Garcia v. Hirakegoma Inc., No. 17 Civ. 7608 (SLC), 2020 WL 1130765, at *7 (S.D.N.Y. Mar. 9, 2020) ("Applying the three-year statute of limitations, [plaintiff] may recover under the FLSA for the period from October 4, 2014 (three years before he filed his complaint) until September 27, 2017 (the date his employment ended).") (citation omitted).

Unlike the FLSA, "[a]ny action to recover upon a liability imposed by NYLL's Articles 6 and 19 must be commenced within six years." Martinez v. 2009 Bamkp Corp., 18-CV-7414 (GBD) (KNF), 2019 WL 7708607, at *4 (S.D.N.Y. Dec. 10, 2019) (quotation marks and citation omitted), adopted, 2020 WL 409691 (S.D.N.Y. Jan. 23, 2020); see also N.Y. Lab. Law §§ 198(3), 663(3). This six-year statute of limitations, and thus the period from which a

plaintiff can recover under the NYLL, is likewise calculated based on the filing date of the complaint.  See Doo Nam Yang, 427 F.Supp.2d at 338 (concluding that "defendants [were] liable under New York law for violations that accrued during the six years that preceded the filing of the complaint"); see also Liz v. 5 Tellers Assocs., L.P., No. 20-CV-212 (MKB) (RER), 2021 WL 1224518, at *8 (E.D.N.Y. Apr. 1, 2021) ("The NYLL statute of limitations is six years from the date that the employee filed a complaint.") (citing N.Y. Lab. Law §§ 198(3), 663(3)); Perez Garcia, 2020 WL 1130765, at *7 ("Applying the six-year statute of limitations under the NYLL, [the plaintiff] may recover back pay for the period from October 4, 2011 (six years before the complaint was filed) until September 27, 2017.").

When a plaintiff files an amended pleading, the limitations period will nevertheless be based off of the filing date of the original complaint where the amended complaint relates back thereto.  See Chaohui Tang v. Wing Keung Enters., Inc., 210 F.Supp.3d 376, 409-10 (E.D.N.Y. 2016) (calculating the FLSA and the NYLL statutes of limitations based on the filing on the original complaint where the plaintiff filed an amended complaint that "re-allege[d] essentially the same claims and factual allegations").  "Where the amended complaint does not set forth a new claim but renders prior allegations more definite and precise, relation back occurs."  Id. at 409 (quotation marks and citation omitted); see also Slayton v. Am. Express Co., 460 F.3d 215, 228-29 (2d Cir. 2006); Fed. R. Civ. P. 15(c).

In the instant case, plaintiffs seek to use the filing date of the original Complaint for calculating the limitations periods, despite having filed amended pleadings, see Pl. Mem. at 8-9, and having failed to effect proper service of process of the first two complaints, see supra, Section II.  While the Court has found no federal wage-and-hour cases involving similar facts,

13

the rationale of the foregoing authority addressing statutes of limitations and the relation-back doctrine leads this Court to conclude that plaintiffs have properly based their calculations on the filing date of the original Complaint.

Accordingly, plaintiffs may bring claims for FLSA violations occurring from February 28, 2014, and NYLL violations occurring from February 28, 2011.

## IV.    Liability

### A.    The Fair Labor Standards Act – Legal Principles

The FLSA mandates that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess [of 40 hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). In addition, the FLSA sets forth a minimum hourly wage that an employer must pay its employees. See id. § 206(a). The FLSA defines an "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." Id. § 203(d); see also id. § 203(g) (defining "employ" as "to suffer or permit to work"). An employee may bring suit against his or her employer where the employee was "engaged in commerce or in the production of goods for commerce," or where the employer is "an enterprise engaged in commerce or in the production of goods for commerce," id. § 207(a)(1), with an annual gross volume of sales of at least $500,000, id. § 203(s)(1)(A)(ii).

Under the FLSA, an employee must "be compensated at a rate of no less than one and one-half times the regular rate of pay for any hours worked in excess of forty per week." Nakahata v. N.Y.-Presbyterian Healthcare Sys., Inc., 723 F.3d 192, 200 (2d Cir. 2013)

14

(citing 29 U.S.C. § 207(a)).  The FLSA further dictates that nonexempt employees must be paid a minimum wage, see 29 U.S.C. § 206(a), which, for the entire period of plaintiffs' employment, was $7.25 per hour, see id. § 206(a)(1)(C).  In order to establish liability under the FLSA for unpaid minimum wages or overtime pay, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work."  Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011) (citing Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 686-87 (1946); Chao v. Gotham Registry, Inc., 514 F.3d 280, 287 (2d Cir. 2008); Grochowski v. Phoenix Constr., 318 F.3d 80, 87 (2d Cir. 2003)).  Employers who violate this provision "shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages."  29 U.S.C. § 216(b).

## B.    New York Labor Law – Legal Principles

The NYLL is similar to the FLSA in that it requires employers to pay a minimum hourly wage to employees,[16] as well as overtime compensation.  See N.Y. Lab. Law § 650 *et seq.*; Gunawan, 897 F.Supp.2d at 84 ("The NYLL mirrors the FLSA in most but not all respects.").  But unlike the FLSA, the NYLL's WTPA requires that employers provide employees, at the time of hiring, a notice that sets forth, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage . . . ; the

---

[16] The minimum wage required under the NYLL is, however, higher than the rate mandated under the FLSA. See *infra* p. 30 n.30.

regular pay day . . . ; the name of the employer; . . . [and] the regular hourly rate and overtime rate of pay."  N.Y. Lab. Law § 195.1(a).  Moreover, section 195(3) of the NYLL obligates an employer to "furnish each employee with a statement with every payment of wages, listing . . . the dates of work covered by that payment of wages; . . . rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; . . . and net wages."  Id. § 195(3).

## C.    Successor Liability

Characterizing Sunny as the "corporate successor" of 43 Ave, plaintiffs ask the Court "to impose joint and several liability as a matter of equity."  Pl. Supp. at 1.  "Generally, [however,] a successor is not responsible for the liabilities of its predecessor."  Chen v. DG & S NY, Inc., 406 F.Supp.3d 216, 222 (E.D.N.Y. 2016) (citation omitted).

> Under certain circumstances, however, a court may find that a successor has either expressly or impliedly assumed the predecessor's liabilities and can therefore be held accountable for them.  In the FLSA and NYLL context, courts have employed two tests to determine if liability should be imposed on a successor – the traditional test[, i.e., the common-law test,] and the substantial continuity test.

Id. (citing Vasquez v. Ranieri Cheese Corp., No. 07-cv-464-ENV-VVP, 2010 WL 1223606, at *10 nn.13-14 (E.D.N.Y. Mar. 26, 2010)).

### 1.  FLSA – Successor Liability Under the Substantial-Continuity Test

"The substantial continuity test 'focus[es] on whether the new company has acquired substantial assets of its predecessor and continued, without interruption or substantial change, the predecessor's business operations.'"  Feng Chen v. Patel, No. 16 Civ. 1130 (AT) (SDA), 2019 WL 2763836, at *4 (S.D.N.Y. July 2, 2019) (alteration in original) (quoting Fall River

Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 43 (1987)).  "The Second Circuit, . . . while acknowledging application of the substantial continuity test in the labor law context, has yet to rule directly on whether the test should apply in an FLSA case of successor liability." De Ping Song v. 47 Old Country, Inc., 975 F.Supp.2d 288, 295 (E.D.N.Y. 2013), vacated on other grounds sub nom. De Ping Song v. Inhae Corp., 578 F.App'x 22 (2d Cir. 2014); see also Xue Ming Wang v. Abumi Sushi, Inc., 262 F.Supp.3d 81, 88 (S.D.N.Y. 2017).  In the absence of guidance from the Second Circuit, courts in the Eastern District of New York have concluded that the weight of authority supports the application of the substantial-continuity test to cases involving FLSA claims.  See, e.g., Rotthoff v. New York State Cath. Health Plan, Inc., No. 19-CV-04027 (AMD) (CLP), 2020 WL 5763862, at *6, *9 (E.D.N.Y. Sept. 28, 2020); see also De Ping Song, 975 F.Supp.2d at 296 (applying the substantial-continuity test to a plaintiff's FLSA claim in light of the absence of guidance from the Second Circuit, and given the widespread use of the test in the labor law context).

Under the substantial-continuity test, courts generally consider and apply the following factors:

(1) whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; (2) the ability of the predecessor to provide relief; (3) whether there has been a substantial continuity of business operations; (4) whether the new employer uses the same [location]; (5) whether he uses the same or substantially the same work force; (6) whether he uses the same or substantially the same supervisory personnel; (7) whether the same jobs exist under substantially the same working conditions; (8) whether he uses the same machinery, equipment, and methods of production; and (9) whether he produces the same product.

Xue Ming Wang, 262 F.Supp.3d at 89 (citations omitted); see Chen, 406 F.Supp.3d at 223.

While none of the foregoing factors is dispositive, courts have found that the first two factors – the successor's notice of potential liability and the predecessor's ability to provide

relief to the plaintiff – are "critical" to the court's analysis.  See Feng Lin v. Quality Woods, Inc., No. 17-CV-3043-DLI-SJB, 2021 U.S. Dist. LEXIS 150447, at *21-22 (E.D.N.Y. Aug. 10, 2021) (citations omitted); Xue Ming Wang, 262 F.Supp.3d at 89.  Still, "it is not necessary that each factor be met to find successor liability." Bautista v. Beyond Thai Kitchen, Inc., No. 14 Civ. 4335 LGS, 2015 WL 5459737, at *6 (S.D.N.Y. Sept. 17, 2015) (quotation marks and citation omitted).  Ultimately, a court's determination as to the existence of substantial continuity between a defendant and its predecessor should be based on the totality of the circumstances presented.  See, e.g., Franco v. Jubilee First Ave. Corp., No. 14-CV-07729 (SN), 2016 WL 4487788, at *9 (S.D.N.Y. Aug. 25, 2016) ("The [substantial-continuity] inquiry is 'primarily factual in nature' and based on the totality of circumstances.").

## 2.  NYLL – Successor Liability Under the Common-Law Test

A different test of successor liability applies to claims under the NYLL.  "For purposes of the NYLL, New York common-law principles . . . determine whether a successor corporation may be liable for the violations of its predecessor." Patino v. Brady Parking, Inc., No. 11cv3080 (DF), 2017 U.S. Dist. LEXIS 189218, at *24 (S.D.N.Y. Oct. 31, 2017) (citations omitted); see also Xue Ming Wang, 262 F.Supp.3d at 88 (finding "no basis to apply the [substantial-continuity test] to claims arising under state law.").  Under the stricter common-law test, no successor liability will be found for a predecessor's violations of the NYLL except "(1) where the successor expressly or impliedly assumed the predecessor's tort liability; (2) where there was a consolidation or merger of seller and purchaser; (3) where the purchasing corporation was a mere continuation of the selling corporation; or (4) where the transaction is entered into fraudulently to escape such obligations." Battino v. Cornelia Fifth

Ave., LLC, 861 F.Supp.2d 392, 401 (S.D.N.Y. 2012) (citation omitted); see Kaur v. Royal

Arcadia Palace, Inc., 643 F.Supp.2d 276, 289 (E.D.N.Y. 2007) (same).  Courts frequently

treat the de facto merger and mere-continuation exceptions as a single exception, see Chen,

406 F.Supp.3d at 223, and require that the plaintiff show continuity of ownership of the

business in question, see Battino, 861 F.Supp.2d at 401.

### D.    Liability in This Case

Having set forth the relevant legal standards under the FLSA and the NYLL, the Court

now considers whether the factual allegations asserted in plaintiffs' Second Amended

Complaint are sufficient to warrant a finding of liability against each defendant.  See Fed. R.

Civ. P. 8(b)(6); Mickalis Pawn Shop, 645 F.3d at 137.[17]

### 1.    Successor Liability as to Sunny

Relying on a theory of successor liability, plaintiffs assert that Sunny is also jointly and

severally liable for 43 Ave's violations of the FLSA and the NYLL.[18]  See SAC ¶¶ 30-37, 164,

---

[17] Plaintiffs bring their FLSA claims pursuant to a theory of "enterprise" coverage.  See SAC ¶ 15 ("[43 Ave] had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year at all relevant times."); id. ¶ 16 ("[43 Ave] purchased and handled goods moved in interstate commerce" such as "cleaning supplies that originated outside the State of New York."); id. ¶ 20 ("Sunny Cleaners had gross sales in excess of Five Hundred Thousand Dollars ($500,000) per year."); id. ¶ 21 ("Sunny Cleaners purchases and handles goods moved in interstate commerce" such as "cleaning supplies that originated outside the State of New York.").  In the context of a motion for default judgment, courts have found similar conclusory but uncontested allegations to be sufficient to satisfy FLSA's interstate commerce requirement.  See Reyes v. Art Tek Design, Ltd., No. 16-CV-5168 (ADS)(AYS), 2018 WL 614980, at *3 (E.D.N.Y. Jan. 11, 2018), adopted, 2018 WL 611733 (E.D.N.Y. Jan. 29, 2018); Vilchis v. Seoul Sisters, Inc., No. 15-CV-6339 (JBW)(MDG), 2016 WL 6106478, at *3 (E.D.N.Y. Sept. 15, 2016), adopted, 2016 WL 6102342 (E.D.N.Y. Oct. 18, 2016); Fermin v. Las Delicias Peruanas Rest., Inc., 93 F.Supp.3d 19, 33-34 (E.D.N.Y. 2015).

[18] Plaintiffs also appear to allege that 43 Ave is jointly and severally liable for Sunny's wage-and-hour violations.  See, e.g., SAC ¶¶ 164, 174, 181; Pl. Mem. at 5, 8; Pl. Supp. at 1-2; supra note 14.  But plaintiffs fail to identify a theory under which 43 Ave, as the predecessor, could be held jointly and severally liable for its successor's violations.  See generally SAC; see Payamps v. M & M Convenience Deli & Grocery Corp., No. 16-CV-4895-LDH-SJB, 2019 WL 8381264, at *10 (E.D.N.Y. Dec. 9, 2019) ("[S]uccessor liability is not a separate cause of action but merely a theory for imposing liability on a defendant based on the predecessor's conduct." (alteration in original) (internal quotation marks and citation omitted)).  As such, the Court declines to recommend that 43 Ave

174, 181, 186, 190; Pl. Mem. at 4-5; Pl. Supp. at 1-2.  Plaintiffs further argue that, in making

a determination as to successor liability, the Court should apply the substantial-continuity test.[19]

See Pl. Mem. at 4-5; Pl. Supp. at 1.  For the following reasons, the Court concludes that,

accepting plaintiffs' allegations in the Second Amended Complaint as true, those allegations

are sufficient to support a finding that Sunny is liable with respect to 43 Ave's FLSA overtime

violations, but, because of the stricter test for successor liability under state law, Sunny is not

liable for 43 Ave's NYLL violations.

### a.  The Substantial-Continuity Test

In regards to Sunny's liability for 43 Ave's FLSA violations, the first (and critical)

factor – the successor's notice of potential liability – weighs in favor of finding substantial

continuity between defendants' businesses in this case.  Actual notice requires the plaintiff to

"point to evidence that the successor either knew of an actual claim that had been filed against

the predecessor, or was aware of the existence of the labor violation (whether or not any claim

had been filed at the time of purchase)."  Li v. New Ichiro Sushi, Inc., No. 14-cv-10242

(AJN) and 15-cv-414 (AJN), 2020 WL 2094095, at *5 (S.D.N.Y. Apr. 30, 2020) (citations

omitted).  Plaintiffs wrongly assert that Sunny was on notice of its potential liability for 43

Ave's FLSA violations because it "acquired the dry-cleaning business in 2015, during the

---

be held jointly and severally liable for the damages attributable to violations that occurred after the sale of the business to Sunny.

[19] While plaintiffs are required to plead allegations of successor liability, they are not required "to explicitly use the word 'successor liability' for the pleading to adequately allege such a claim."  Payamps, 2019 WL 8381264, at *10.  Accordingly, plaintiffs' allegations as set forth in the Second Amended Complaint are sufficient on default judgment to preserve this theory of liability.  See id.; SAC ¶¶ 30-37 (alleging that many of Top N' Quality's working conditions, services, and employees remained substantially the same following Sunny's purchase of the business).

pendency of the litigation." Pl. Supp. at 2. But the original Complaint was filed against 43

Ave on February 28, 2017, after Sunny had already purchased Top N' Quality. See SAC ¶¶

14, 19. Thus, plaintiffs' allegations cannot establish that Sunny had actual notice of this

litigation. Nevertheless, plaintiffs also argue that Sunny had notice of its predecessor's

violations, and potential liability therefor, because it continued 43 Ave's unlawful payroll

practices after purchasing the business. See id. ¶ 37; Pl. Mem. at 5; Pl. Supp. at 2. Hence,

Sunny was (or should have been) "aware of the existence of the labor violation," Li, 2020 WL

2094095, at *5, and "constructive notice is sufficient for purposes of substantial continuity in

the FLSA context," Bautista, 2015 WL 5459737, at *7. Because plaintiffs' allegations are

sufficient to show constructive knowledge, plaintiffs have satisfied the first critical factor,

notice. See, e.g., Rotthoff, 2020 WL 5763862, at *7.

As to the second factor, concerning the predecessor's ability to pay, plaintiffs allege

that 43 Ave sold its primary asset – i.e., the dry-cleaning business – to Sunny, and, therefore,

cannot provide relief to plaintiffs. See SAC ¶ 32. While plaintiffs' factual allegations must be

taken as true, the Court need not accept plaintiffs' conclusory assumption that 43 Ave's sale of

Top N' Quality renders it without any source of income or asset from which it could satisfy a

judgment against it. See id.[20] The record is unclear as to whether 43 Ave continues to conduct

business and whether it retained any assets after the sale. Therefore, the second substantial-

continuity factor does not clearly militate in favor of finding successor liability.[21] See Xue

---

[20] 43 Ave is still listed as having an active status with the Secretary of State, suggesting that it may have other revenue streams.

[21] The Court further notes that there is no indication that Sunny is better positioned to afford relief to plaintiffs, as the record reflects that Sunny sold Top N' Quality to KY Cleaners, Inc. in February 2019. See Pl. Third Mot. to Amend at 1.

Ming Wang, 262 F.Supp.3d at 95 (holding that the predecessor's sale of its business and its subsequent dissolution did not necessarily render the predecessor unable to provide relief to the plaintiff).

As to all but the sixth factor, plaintiffs have pleaded facts demonstrating that the remaining relevant considerations favor a finding of successor liability with respect to 43 Ave's FLSA violations.  Plaintiffs allege that the dry-cleaning business acquired by Sunny remained at the same location, 42-16 43rd Avenue, Sunnyside, New York; operated under the same name, "Top N' Quality"; used the same dry-cleaning equipment; employed much of the same workforce, including plaintiffs Duchitanga, Martinez, and Juncal; and continued to offer the same dry-cleaning services.[22]  See SAC ¶¶ 33-37; Chen, 406 F.Supp.3d at 223.  These factual allegations, deemed as conceded, satisfy the third through fifth, and eight through ninth factors.  See Xue Ming Wang, 262 F.Supp.3d at 89.  In addition, plaintiffs' positions of employment at Top N' Quality also continued under substantially the same working conditions.  See, e.g., SAC ¶¶ 59-60, 79-80, 112-113.  Therefore, the seventh factor also weighs in favor of successor liability.  See Xue Ming Wang, 262 F.Supp.3d at 89.

The sole remaining factor weighing against a finding of successor liability is the sixth factor – whether the two defendants used the same supervisory personnel – as plaintiffs allege that their managers and supervisors changed following Sunny's purchase of Top N' Quality.  See SAC ¶ 33 ("After the transition, Jae Hee Sim assumed the role of Sang Hun Kim and managed the day-to-day operations of Top N' Quality.  Around the same time, Jae Hee

---

[22] As noted previously, the pleading also asserts that Sunny hired plaintiff Perez at around the same time that it acquired the business, see SAC ¶ 33, but this assertion conflicts with Perez's sworn statement that her employment commenced years earlier, and appears to be inaccurate, see supra note 7.

Sim installed Charlie 'Doe' as a manager for the dry-cleaning business . . . ."); Xue Ming Wang, 262 F.Supp.3d at 89.

In sum, all but two of the relevant factors, including one considered critical, weigh in favor of finding substantial continuity between defendants' businesses.  Based on the totality of the circumstances, the Court therefore concludes that plaintiffs' allegations in the Second Amended Complaint are sufficient on default judgment to establish Sunny's successor liability as to 43 Ave's FLSA violations.  See Franco, 2016 WL 4487788, at *9; cf. Feng Lin, 2021 U.S. Dist. LEXIS 150447, at *22-26 (recommending that the court decline to find successor liability on a motion for default judgment where the plaintiff had conceded that three of the relevant factors weighed against him; his assertions were contradicted by the complaint; and only the sixth factor, relating to continuity of management, supported his theory).

**b.  The State Common-Law Test**

On the other hand, plaintiffs have not adequately pleaded successor liability relating to 43 Ave's NYLL violations.  Contrary to plaintiffs' assertions, the appropriate test under which to determine successor liability of claims arising under New York state law is the narrower common-law test.  As discussed *supra*, there are four exceptions to the general rule against holding a defendant liable for its predecessor's wage-and-hour violations.  See Battino, 861 F.Supp.2d at 401; Kaur, 643 F.Supp.2d at 289.  As an initial matter, plaintiffs do not contend that Sunny assumed the tort liability of 43 Ave, or that defendants entered into the agreement for the purchase of Top N' Quality in order to fraudulently avoid liability, see generally SAC; Pl. Mem.; Pl. Supp.; and plaintiffs are thereby unable to establish successor liability under the fraud and assumption-of-liability exceptions, see Battino, 861 F.Supp.2d at 401; Kaur, 643

F.Supp.2d at 289.  Moreover, plaintiffs concede that the ownership of Top N' Quality changed with Sunny's purchase of the dry-cleaning business.  See Pl. Mem. at 4.  Consequently, the two remaining exceptions – de facto merger and mere continuation – are also inapplicable here, as both require continuity of ownership.  See Ramirez v. H.J.S. Car Wash Inc., No. CV-11-2664 (VVP), 2013 WL 1437600, at *5 (E.D.N.Y. Apr. 9, 2013) ("Notwithstanding that there are four parts to the test, the first part—continuity of ownership—is essential for establishing successor liability under these exceptions, and successor liability therefore cannot be imposed in the absence of continuity of ownership." (citation omitted)).  Overall, plaintiffs fail to establish that any of the common-law exceptions are satisfied here, and, therefore, cannot demonstrate, even on default, that Sunny is jointly and severally liable for 43 Ave's NYLL violations.

Accordingly, the relevant time period for purposes of Sunny's liability for 43 Ave's FLSA violations is February 28, 2014 until November 2, 2015,[23] following Sunny's purchase of Top N' Quality from 43 Ave.

## 2.  Minimum Wage Violations

Both the FLSA and the NYLL require that employees be paid a minimum hourly rate. See 29 U.S.C. § 206(a)(1); N.Y. Lab. Law § 652.  Extrapolating from their weekly salaries and number of hours worked, plaintiffs allege that during their periods of employment with Top N' Quality, they were paid hourly rates, that, while increasing over time, nevertheless fell

---

[23] Plaintiffs allege that Sunny purchased the business from 43 Ave in October 2015, see SAC ¶¶ 14, 19, 31, but fail to specify in any submission the exact date the transfer occurred.  Sunny's records with the New York Secretary of State indicate that it did not register as the owner of Top N' Quality until October 27, 2015.  Because it is unlikely that Sunny took over the business in the middle of a pay period, the Court uses the first day of the subsequent pay period for purposes of successor liability and damages calculations.

below the applicable minimum wage mandated by the NYLL.  See SAC ¶¶ 2, 94-96, 100-103, 107-109, 113-114, 118-120, 124-125, 129-134, 163.

According to plaintiffs' calculations, from February 28, 2011 until his employment ended in January 2017,[24] Duchitanga was paid an effective hourly rate that started at $8.49 per hour and gradually increased to $9.80 per hour.[25]  See Damages Calculations at 1-3.  With respect to Perez, plaintiffs allege that, from February 28, 2011 until her employment ended in January 2017, she was paid an effective hourly rate that started at $7.17 per hour and increased throughout her employment, eventually to the rate of $10.78 per hour.[26]  See id. at 4-8.  Finally, as to Juncal, it is alleged that from February 28, 2011 until his termination in January

---

[24] Plaintiffs' damages calculations account only for Duchitanga's employment through January 7, 2017.  See Damages Calculations at 3.  However, the Second Amended Complaint, as well as Duchitanga's affidavit, assert that he worked for Top N' Quality until January 31, 2017.  See SAC ¶¶ 7, 59; Duchitanga Aff. ¶¶ 2, 8.  These filings also consistently allege that Duchitanga was paid at a rate of $500 per week.  See SAC ¶ 60; Duchitanga Aff. ¶ 9.  Accordingly, the Court credits these allegations and calculates Duchitanga's damages through January 31, 2017.

[25] Specifically, Duchitanga was paid $8.49 per hour from February 28, 2011 to December 31, 2011; $8.87 per hour from January 1, 2012 to December 30, 2013; $8.87 per hour from December 31, 2013 to December 31, 2014; $9.80 per hour from December 31, 2014 to December 30, 2015; $9.80 per hour from December 31, 2015 to December 30, 2016; and $9.80 per hour from December 31, 2016 to January 31, 2017.  See Damages Calculations at 1-3.

[26] Specifically, Perez was paid the following hourly rates: $7.17 from February 28, 2011 to December 31, 2011; $7.92 from January 1, 2012 to December 30, 2013; $7.92 from December 31, 2013 to December 31, 2014; $8.49 from January 1, 2015 to July 31, 2015;  $8.87 from August 1, 2015 to December 30, 2015; $8.87 from December 31, 2015 to February 29, 2016;  $9.06 from March 1, 2016 to August 31, 2016; $9.80 from September 1, 2016 to September 30, 2016; $10.78 from October 1, 2016 to December 30, 2016; and, finally, $10.78 from December 31, 2016 to January 7, 2017.  See Damages Calculations at 4-8.
    The Court notes that plaintiffs fail to account for Perez's period of employment from July 8, 2015 to July 31, 2015, in their calculations.  See id. at 5.  The Court assigns the hourly pay rate of July 2015 to this time period.  In addition, as previously noted, there are further inconsistencies concerning plaintiffs' employment periods in that the Second Amended Complaint alleges that plaintiffs Perez and Juncal worked for Top N' Quality until January 15, 2017.  See SAC ¶¶ 9-10.  The Court credits the sworn statements of plaintiffs Perez and Juncal, averring that their termination date was January 7, 2017.  See Perez Aff. ¶ 2; Juncal Aff. ¶ 2.

2017, he was initially compensated at an hourly rate of $10.38, which increased by the end of his employment to an hourly rate of $11.76.[27]  See id. at 9-11.

As discussed *supra*, Section III, the earliest date of recovery for plaintiffs' claims under the NYLL—which has a longer statutory period than the FLSA—is February 28, 2011.  At that time, the federal minimum wage was, and throughout their employment remained, $7.25 per hour, 29 U.S.C. § 206(a)(1)(C), whereas the NYLL minimum wage was $7.15 per hour in 2011, N.Y. Lab. Law § 652(1)(a)(ii).  The NYLL minimum wage increased to $8.00 on December 30, 2013, and again to $8.75 on December 31, 2014.  See *infra* p. 30 n.30.  Starting on December 31, 2015, the NYLL minimum wage was $9.00, which then increased to $10.50 on December 31, 2016.  See id.  The NYLL minimum wage did not increase again until December 31, 2017, after plaintiffs' employment ended.  See id.

Plaintiffs therefore state a claim for NYLL minimum wage violations as to certain periods of their employment.  As to Duchitanga, plaintiffs state a claim for NYLL minimum wage violations for the few pay periods following December 31, 2016 through his termination on January 31, 2017.  As to Perez, plaintiffs state a claim for minimum wage violations under the NYLL in connection with her pay periods from December 31, 2013 to December 31, 2014; January 1, 2015 to July 31, 2015; and December 31, 2015 to February 29, 2016.[28]  Finally, with respect to Juncal, plaintiffs fail to state a claim for failure to pay minimum wage under

---

[27] Specifically, Juncal was paid $10.38 from February 28, 2011 to December 30, 2013; $10.38 from December 31, 2013 to December 30, 2014; $10.38 from December 31, 2014 to December 30, 2015; $10.38 from December 31, 2015 to August 31, 2016; $11.76 from November 7, 2016 to December 30, 2016; and $11.76 from December 31, 2016 to January 7, 2017.  See Damages Calculations at 9-11.

[28] For the period from February 28, 2011 to December 31, 2011, Perez was paid less than the federal (but not state) minimum wage.  As those claims would be time-barred under the FLSA, the Second Amended Complaint contains no FLSA minimum wage claim.

either the FLSA or the NYLL for any period of his employment, consistent with plaintiffs' own calculations.  See Damages Calculations at 9-11.

### 3.  Overtime Violations

Plaintiffs allege that they regularly worked more than 40 hours per week, and that defendants did not pay plaintiffs the requisite premium for each of their respective overtime hours.  See SAC ¶¶ 2, 4, 41.  As to Duchitanga, plaintiffs allege that, from 2011 to 2014, he worked for 53 hours per week, and that defendants did not pay him the requisite premium for his 13 overtime hours.  See id. ¶¶ 51-57.  Plaintiffs further allege that from 2015 to 2017, Duchitanga worked 51 hours per week, and that defendants similarly failed to pay him the requisite premium for his 11 overtime hours.  See id. ¶¶ 59-61.  As to Perez and Juncal, the Second Amended Complaint alleges that from January 2011 through August 2016, they each worked 53 hours per week, and that defendants did not pay either plaintiff the requisite premium for their 13 overtime hours.  See id. ¶¶ 78-81, 93-126.  Plaintiffs further allege that from September 2016 to January 2017, Perez and Juncal each worked 51 hours per week, and that defendants did not pay them the requisite premium for their 11 overtime hours.  See id. ¶¶ 83-85, 128-135.  Plaintiffs have therefore sufficiently alleged claims against defendants for deficiencies in their overtime pay under the FLSA and the NYLL.

### 4.  Wage Theft Prevention Act

Plaintiffs sufficiently allege that defendants did not provide them with the required wage statements at any point during their employment with Top N' Quality, in violation of section 195(3) of the NYLL.[29]  See SAC ¶¶ 2, 49, 77, 91; Duchitanga Aff. ¶ 12; Juncal Aff. ¶

---

[29] Plaintiffs' Second Amended Complaint also sets forth a claim against defendants for failure to provide wage notices, in violation of section 195(1) of the NYLL.  See SAC ¶¶ 182-186.  However, plaintiffs have withdrawn

10; Perez Aff. ¶ 18.  Therefore, plaintiffs have adequately stated claims for violations of the WTPA.

**V.    Damages**

Although the Court must accept as true the well-pleaded, uncontroverted allegations contained within plaintiffs' Second Amended Complaint as to defendants' liability, it need not give the same deference to plaintiffs' allegations regarding damages.  Instead, the Court must perform an inquiry to determine the extent of damages to a "reasonable certainty."  Credit Lyonnais Sec., 183 F.3d at 155.

Under both the FLSA and the NYLL, an employer is required to maintain "records of the wages, hours, and persons employed by him."  Chen, 2016 WL 2909966, at *9 (quoting Rodriguez, 2011 WL 4962397, at *2).  "Where, as here, defendants, having defaulted, failed to produce the requisite records, a plaintiff may meet his or her burden of establishing how many hours he or she worked by relying solely on his or her recollection."  Id. (internal quotation marks and citations omitted); see Vilchis, 2016 WL 6106478, at *5.  Nevertheless, the Court must ensure that the plaintiff's approximations and estimates are reasonable and appropriate.  See Jemine v. Dennis, 901 F.Supp.2d 365, 376-79 (E.D.N.Y. 2012).

**A.    Wage Deficiencies**

Before calculating plaintiffs' damages, the Court must address threshold issues concerning the number of hours plaintiffs worked each week, and the appropriate minimum wage and overtime wage.

---

this claim, seeking damages only for defendants' alleged failure to provide wage statements.  See Pl. Mem. at 1 n.1.

## 1. Hours Worked Per Week

As discussed *supra*, Section IV, plaintiffs allege in the Second Amended Complaint that they worked a weekly total of 53 hours or 51 hours, depending on the period of employment, while working for Top N' Quality.

## 2. Regular Hourly Rate of Pay and Overtime Rate

To calculate a plaintiff's minimum wage and overtime wage compensation, the Court must first determine the plaintiff's regular hourly wage rate.  Plaintiffs were each compensated on a weekly basis regardless of the number hours worked.  See SAC ¶¶ 52, 56, 60, 80, 84, 94, 100, 107, 113, 118, 124, 129-130, 177; Duchitanga Aff. ¶¶ 5, 7, 9; Perez Aff. ¶¶ 5, 7, 9, 11, 13, 15-16; Juncal Aff. ¶¶ 5, 7, 9; see also Damages Calculations.  As detailed below, plaintiffs' weekly compensation rates are alleged to have changed during the course of their employment at Top N' Quality.  "The regular rate is the hourly rate actually paid [to] the employee for the normal, non-overtime workweek for which he [or she] is employed, . . . and [this rate] is calculated by dividing the employee's weekly compensation by the number of hours for which that compensation is intended."  Doo Nam Yang, 427 F.Supp.2d at 338 (internal quotation marks and citations omitted).  Applying this calculation method, plaintiffs' regular hourly rates of pay, based on their uncontested weekly salaries, are as follows.[30]

---

[30] From February 28, 2011 through December 30, 2013, the NYLL minimum wage rate in New York City was $7.15, and then it increased to $8.00 through December 30, 2014, at which point it was raised to $8.75.  See N.Y. Lab. Law § 652(1).  From December 31, 2014 through December 30, 2015, the NYLL minimum rate was $8.75, after which point the minimum wage was $9.00 from December 31, 2015 through December 30, 2016.  See id.  Then, from December 31, 2016 through December 30, 2017 the minimum wage for small employers was $10.50.  See id. at § 652(1)(a)(ii).  The federal minimum wage rate was $7.25 at all relevant times.  See 29 U.S.C. § 206(a)(1)(C).  This Court applies the higher of the two rates.  See 29 C.F.R. § 778.5; Fermin, 93 F.Supp.3d at 49.

Large employers, i.e., those who employ eleven or more employees, and small employers who employ ten or fewer employees, are treated differently under the NYLL.  Compare N.Y. Lab. Law § 652(1)(a)(i) with N.Y. Lab. Law § 652(1)(a)(ii).  Where, as here, plaintiffs failed to provide information regarding the exact size of their employer's workforce, the Court applies the rate for small employers.  See, e.g., Reyes v. Lincoln Deli Grocery

Duchitanga was paid several different weekly rates over the course of his employment. From February 28, 2011 to December 31, 2011, Duchitanga was paid a weekly amount of $450 for which he worked 53 hours, yielding a regular hourly rate of $8.49.  See Damages Calculations at 1.  From January 1, 2012 to December 31, 2014, his weekly pay decreased to $470 for 53 hours per week, which yields a regular hourly rate of $8.87.  See id. at 1-2. Finally, from January 1, 2015 to January 31, 2017, Duchitanga was paid a weekly sum of $500 for 51 hours of work, resulting in a regular hourly rate of $9.80.  See id. at 2-3.

Perez's weekly rate of pay also varied over time.  From February 28, 2011 to December 31, 2011, Perez was paid a weekly amount of $380 for 53 hours of work, for a regular hourly rate of $7.17.  See id. at 4.  Then, from January 1, 2012 to December 31, 2014, she received a weekly amount of $420 for 53 hours of work, for a regular hourly rate of $7.92.  See id. at 4-5.  From January 1, 2015 to July 31, 2015,[31] Perez was paid a weekly amount of $450 for 53 hours of work, for a regular hourly rate of $8.49.  See id. at 5.  From August 1, 2015 to February 29, 2016, Perez's pay increased to a weekly sum of $470 for 53 hours of work, for a regular hourly rate of $8.87.  See id. at 6.  Then, from March 1, 2016 to August 31, 2016, she was paid a weekly amount of $480, for an hourly rate of $9.06.  See id. at 7.  From September 1, 2016 to September 31, 2016, Perez received a weekly sum of $500 for 53 hours of work, for a regular hourly rate of $9.80.  See id.  For the remainder of Perez's

---

Corp.,17-cv-2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018) (applying small-employer rate where the "Complaint [was] completely silent as to how many people [defendant] employ[ed]" and, as such, "there [was] no evidentiary basis for the Court to calculate damages based on the higher rate."), order clarified, 2018 WL 3105070 (S.D.N.Y. June 25, 2018).

[31] See supra note 26.

employment, from October 1, 2016 to January 7, 2017, she received a weekly salary of $550 for 51 hours of work, adjusting her regular hourly rate to $10.78.  See id. at 7-8.

Finally, Juncal was, over time, paid two different weekly rates.  From February 28, 2011 to August 31, 2016, Juncal received a weekly salary of $550 for 53 hours of work per week, which calculates to a regular hourly rate of $10.38.  See id. at 9-10.  Then, from November 7, 2016, to January 7, 2017, Juncal was paid a weekly rate of $600 for 51 hours of work, and thus a regular hourly rate of $11.76.  See id. at 10-11.

Turning next to plaintiffs' claims for unpaid overtime pay, which is calculated as one and one-half times the regular rate, the Court, using the applicable NYLL minimum wage rate, determines the overtime premium owed to plaintiffs.  See Calle v. Yoneles Enters., Inc., 16-CV-1008 (NGG), 2017 WL 6942652, at *14 (E.D.N.Y. Oct. 24, 2017), adopted, 2018 WL 401269 (E.D.N.Y. Jan. 12, 2018).

Plaintiffs' damages for defendants' minimum wage violations (totaling $637.20) and for unpaid premium overtime pay (totaling $53,573.68) are calculated as follows, rounding to the nearest week, consistent with plaintiffs' calculations:

| Angel Duchitanga | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Period | Reg. Wage Rate | NYLL Min. Wage Rate | Min. Wage Owed | OT Hours per Week | OT Wage Rate | OT Owed | Wage Paid per Week | Total Under-payment for Period |
| 2/28/2011 – 12/31/2011 (44 weeks) | $8.49 | $7.15 | $0 | 13 | $12.73 | $55.12 per week ($2,425.28 total) | $450 | **$2,425.28** ($0 min. wage and $2,425.28 OT) |
| 1/1/2012 – 12/30/2013 (104 weeks) | $8.87 | $7.15 | $0 | 13 | $13.30 | $57.59 per week ($5,989.36 total) | $470 | **$5,989.36** ($0 min. wage and $5,989.36 OT) |
| 12/31/2013 – 12/31/2014 (52 weeks) | $8.87 | $8.00 | $0 | 13 | $13.30 | $57.59 per week ($2,994.68 total) | $470 | **$2,994.68** ($0 min. wage and $2,994.68 OT) |

| Period | Reg. Wage Rate | NYLL Min. Wage Rate | Min. Wage Owed | OT Hours per Week | OT Wage Rate | OT Owed | Wage Paid per Week | Total Under-payment for Period |
|---|---|---|---|---|---|---|---|---|
| 1/1/2015 – 12/30/2015 (52 weeks) | $9.80 | $8.75 | $0 | 11 | $14.70 | $53.90 per week ($2,802.80 total) | $500 | **$2,802.80** ($0 min. wage and $2,802.80 OT) |
| 12/31/2015 – 12/30/2016 (52 weeks) | $9.80 | $9.00 | $0 | 11 | $14.70 | $53.90 per week ($2,802.80 total) | $500 | **$2,802.80** ($0 min. wage and $2,802.80 OT) |
| 12/31/2016 – 1/31/2017 (4 weeks) | $9.80 | $10.50 | $28.00 per week ($112.00 total) | 11 | $15.75 | $65.45 per week ($261.80 total) | $500 | **$373.80** ($112 min. wage and $261.80 OT) |
|  |  |  |  |  |  |  | **Total:** | **$17,388.72** ($112 min. wage and $17,276.72 OT) |
| **Estela Perez** | | | | | | | | |
| Period | Reg. Wage Rate | NYLL Min. Wage Rate | Min. Wage Owed | OT Hours per Week | OT Wage Rate | OT Owed | Wage Paid per Week | Total Under-payment for Period |
| 2/28/2011 – 12/31/2011 (44 weeks) | $7.17 | $7.15 | $0 | 13 | $10.75 | $46.54 per week ($2,047.76 total) | $380 | **$2,047.76** ($0 min. wage and $2,047.76 OT) |
| 1/1/2012 – 12/30/2013 (104 weeks) | $7.92 | $7.15 | $0 | 13 | $11.88 | $51.48 per week ($5,353.92 total) | $420 | **$5,353.92** ($0 min. wage and $5,353.92 OT) |
| 12/31/2013 – 12/31/2014 (52 weeks) | $7.92 | $8.00 | $3.20 per week ($166.40 total) | 13 | $12.00 | $53.04 per week ($2,758.08 total) | $420 | **$2,924.48** ($166.40 min. wage and $2,758.08 OT) |
| 1/1/2015 – 07/31/2015 (30 weeks) | $8.49 | $8.75 | $10.40 per week ($312 total) | 13 | $13.12 | $60.19 per week ($1,805.70 total) | $450 | **$2,117.70** ($312 min. wage and $1,805.70 OT) |
| 8/1/2015 – 12/30/2015 (22 weeks) | $8.87 | $8.75 | $0 | 13 | $13.30 | $57.59 per week ($1,266.98 total) | $470 | **$1,266.98** ($0 min. wage and $1,266.98 OT) |
| 12/31/2015 – 2/29/2016 (9 weeks) | $8.87 | $9.00 | $5.20 per week ($46.80 total) | 13 | $13.50 | $60.19 per week ($541.71 total) | $470 | **$588.51** ($46.80 min. wage and $541.71 OT) |

| 3/1/2016 – 8/31/2016 (26 weeks) | $9.06 | $9.00 | $0 | 13 | $13.59 | $58.89 per week ($1,531.14 total) | $480 | **$1,531.14** ($0 min. wage and $1,531.14 OT) |
|---|---|---|---|---|---|---|---|---|
| 9/1/2016 – 9/30/2016 (4 weeks) | $9.80 | $9.00 | $0 | 11 | $14.70 | $53.90 per week ($215.60 total) | $500 | **$215.60** ($0 min. wage and $215.60 OT) |
| 10/1/2016 – 12/30/2016 (13 weeks) | $10.78 | $9.00 | $0 | 11 | $16.17 | $59.29 per week ($770.77 total) | $550 | **$770.77** ($0 min. wage and $770.77 OT) |
| 12/31/2016 – 1/7/2017 (1 week) | $10.78 | $10.50 | $0 | 11 | $16.17 | $59.29 per week ($59.29 total) | $550 | **$59.29** ($0 min. wage and $59.29 OT) |
| | | | | | | | **Total:** | **$16,876.15** ($525.20 min. wage and $16,350.95 OT) |

| Luis Juncal | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Period** | **Reg. Wage Rate** | **NYLL Min. Wage Rate** | **Min. Wage Owed** | **OT Hours per Week** | **OT Wage Rate** | **OT Owed** | **Wage Paid per Week** | **Total Under-payment for Period** |
| 2/28/2011 – 12/30/2013 (148 weeks) | $10.38 | $7.15 | $0 | 13 | $15.57 | $67.47 per week ($9,985.56 total) | $550 | **$9,985.56** ($0 min. wage and $9,985.56 OT) |
| 12/31/2013 – 12/30/2014 (52 weeks) | $10.38 | $8.00 | $0 | 13 | $15.57 | $67.47 per week ($3,508.44 total) | $550 | **$3,508.44** ($0 min. wage and $3,508.44 OT) |
| 12/31/2014 – 12/30/2015 (52 weeks) | $10.38 | $8.75 | $0 | 13 | $15.57 | $67.47 per week ($3,508.44 total) | $550 | **$3,508.44** ($0 min. wage and $3,508.44 OT) |
| 12/31/2015 – 8/31/2016 (35 weeks) | $10.38 | $9.00 | $0 | 13 | $15.57 | $67.47 ($2361.45 total) | $550 | **$2361.45** ($0 min wage and $2361.45 OT) |
| 11/7/2016 – 12/30/2016 (8 weeks) | $11.76 | $9.00 | $0 | 11 | $17.64 | $64.68 ($517.44 total) | $600 | **$517.44** ($0 min. wage and $517.44 OT) |
| 12/31/2016 – 1/7/2017 (1 week) | $11.76 | $10.50 | $0 | 11 | $17.64 | $64.68 ($64.48 total) | $600 | **$64.68** ($0 min. wage and $64.68 OT) |

| | | |
|---|---|---|
| **Total:** | **$19,946.01** | |
| | ($0 min. wage and $19,946.01 OT) | |
| **Total wage deficiencies for all plaintiffs:**[32] | **$54,210.88** | |
| | ($637.20 min. wage and $53,573.68 OT) | |

---

[32] To calculate the total amount of plaintiffs' minimum wage and overtime violation damages for each defendant's ownership period, the Court used the following method: With respect to 43 Ave, the Court calculated the amount of damages occurring from February 28, 2011 until November 1, 2015, for each plaintiff (as described below) and added the three subtotals to arrive at the final minimum wage and overtime violation damages total. Similarly, with respect to Sunny, the Court calculated the amount of overtime and minimum wage violation damages occurring from November 2, 2015 until January 31, 2017, for each plaintiff (as described below) and added the three subtotals, which yielded the final amount. To calculate the total amount of damages for FLSA violations (i.e., overtime violations only) committed by 43 Ave, for which Sunny is jointly and severally liable, the following method was used: The Court calculated the amount of FLSA overtime violation damages from February 28, 2014 until November 1, 2014—i.e., from the beginning of the statutory period until Sunny's ownership period began—for each plaintiff (as described below). The three subtotals were then summed to arrive at the final FLSA overtime violation damages amount for which Sunny is liable pursuant to the substantial-continuity test of successor liability.

For illustrative purposes, the Court provides the calculation method used for plaintiff Duchitanga as an example of how each plaintiff's damages were individually calculated, and then summed to arrive at the damages totals recommended by the Court. To calculate the portion of Duchitanga's minimum wage and overtime violation damages for which each defendant is liable, the Court used the following method: With respect to 43 Ave, the Court summed those damages occurring from February 28, 2011 until November 1, 2015, which includes the total underpayment amount for the first through third periods reflected in this Court's wage-deficiency chart, and a portion of the total underpayment amount for the fourth period. The amount of damages from the fourth period that is attributable to 43 Ave was calculated by multiplying the number of weeks between January 1, 2015 and November 1, 2015, by $53.90, i.e., the weekly owed overtime rate for the fourth period. There were no minimum wage violation damages to include for the fourth period.

With respect to Sunny, the Court summed the damages occurring from November 2, 2015 until January 31, 2017, which included a portion of the total underpayment amount for the fourth period, and the entirety of the total underpayment amount for the fifth and sixth periods. Sunny's damages portion of the fourth period was calculated by subtracting 43 Ave's damages portion of the fourth period from the total underpayment amount for the fourth period. To calculate the portion of Duchitanga's damages for 43 Ave's FLSA violations, for which Sunny is jointly and severally liable (i.e., overtime violation damages only), the Court used the following method: The Court summed the overtime violation damages occurring from February 28, 2014 until November 1, 2015. This total included a portion of the overtime damages from both the third and fourth periods. The amount of overtime damages from the third period for which Sunny is jointly and severally liable was calculated by multiplying the number of weeks between February 28, 2014 and December 31, 2014, by $57.59, i.e., the weekly owed overtime rate for the third period. For the fourth period, the number of weeks between January 1, 2015 and November 1, 2015, was multiplied by $53.90, i.e., the weekly owed overtime rate for the fourth period.

Based on the foregoing calculations, the Court recommends granting an award of $43,436.13 against 43 Ave, and $10,774.75 against Sunny, to compensate plaintiffs for defendants' minimum wage and overtime violations.  The Court further recommends that Sunny be held jointly and severally liable for $15,731.05 of the wage deficiency attributable to 43 Ave, based on a theory of successor liability for the period of February 28, 2014 (i.e., the earliest date for recovery under the FLSA) up until November 2, 2015.

### B.     Liquidated Damages

Plaintiffs request liquidated damages under the FLSA and/or the NYLL.  See SAC *ad damnum* clause; Pl. Mem. at 10-12, 14; Damages Calculations.

Under the FLSA, an employer who violates overtime and/or minimum wage compensation requirements is liable for "an additional equal amount as liquidated damages," unless the employer demonstrates to the Court that it acted in good faith and had reasonable grounds for believing that its actions were lawful.  See 29 U.S.C. §§ 216(b), 260.  Here, plaintiffs' allegation that defendants' violations were willful is unchallenged and, as a result of defendants' default in this action, the record is devoid of evidence of defendants' good faith or reasonable belief.  See Peralta v. M & O Iron Works, Inc., No. 12-CV-3179 (ARR)(RLM), 2014 WL 988835, at *10 (E.D.N.Y. Mar. 12, 2014).  Therefore, plaintiffs are entitled to an award of liquidated damages under the FLSA for defendants' overtime violations.

The NYLL similarly authorizes an award of liquidated damages for a prevailing plaintiff's unpaid wages, "unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law . . . ."  N.Y. Lab. Law § 663(1).

Liquidated damages under the NYLL are calculated at 100 percent of the unpaid wages due to a prevailing plaintiff.  See id.

Because "there are no meaningful differences" between the FLSA and NYLL liquidated damages provisions, the Second Circuit has interpreted the two statutes "as not allowing duplicative liquidated damages for the same course of conduct." Rana v. Islam, 887 F.3d 118, 123 (2d Cir. 2018).

Applying 100 percent liquidated damages as required, the Court recommends awarding plaintiffs $54,210.88 in liquidated damages for unpaid minimum wages under the NYLL and for unpaid overtime wages under the NYLL or the FLSA, allocated as between the two defendants in the same manner as the wage deficiencies discussed earlier.

### C.    Statutory Damages under the WTPA

Under the WTPA, Duchitanga, Perez, and Juncal are each entitled $250 per work day, not to exceed $5,000, for failure to provide a wage statement.[33]  N.Y. Lab. Law § 198(1-d); see Gil v. Frantzis, 17-CV-1520-ARR-SJB, 2018 WL 4522094, at *10 (E.D.N.Y. Aug. 17, 2018), adopted as modified on other grounds, 2018 WL 4299987 (E.D.N.Y. Sept. 10, 2018).

Here, plaintiffs never received proper wage statements.  See SAC ¶¶ 2, 49, 77, 91; Duchitanga Aff. ¶ 12; Juncal Aff. ¶ 10; Perez Aff. ¶ 18.  As plaintiffs worked for each defendant for over 100 days, they are entitled to recover the statutory maximum for each defendant's wage statement violations.  Therefore, the Court recommends that the District

---

[33] Prior to an amendment to the WTPA that took effect on February 27, 2015, the statutory damages for wage notice violations were $100 per work week, not to exceed $2,500.  See Gil, 2018 WL 4522094, at *10.

Court award each plaintiff $5,000 from each defendant for violating the WTPA's wage statement requirements.

### D. Interest

#### 1. Prejudgment Interest

Plaintiffs request prejudgment interest in the amount of $34,556.33. See Pl. Mem. at 17. "Although it is 'well settled' that pre-judgment interest is not awardable under FLSA where liquidated damages are awarded, . . . NYLL permits the award of both liquidated damages and pre-judgment interest." Lopez v. Royal Thai Plus, 16-CV-4028-NGG-SJB, 2018 WL 1770660, at *12 (E.D.N.Y. Feb. 6, 2018) (quotation marks and citations omitted), adopted, 2018 WL 1770555 (E.D.N.Y. Apr. 12, 2018). Prejudgment interest is available for unpaid overtime and/or minimum wages under the NYLL, but not for amounts awarded under the WTPA, see Martinez v. Alimentos Saludables Corp., 16 CV 1997 (DLI) (CLP), 2017 WL 5033650, at *24 (E.D.N.Y. Sept. 22, 2017), or on liquidated damages, see Fermin, 93 F.Supp.3d at 49.

"There is a split in this Circuit as to whether prejudgment interest should be allowed on unpaid wages which are owed under both the FLSA and NYLL." Thomas v. Good Vision Taste Inc., No. 17 CV 6084 (FB)(LB), 2018 WL 4268909, at *7 (E.D.N.Y. Apr. 17, 2018) (quotation marks and citation omitted), adopted as modified on other grounds, 2019 WL 4265868 (E.D.N.Y. Sept. 5, 2018). Having considered the rationales of the two competing lines of cases, this Court concludes that, since "prejudgment interest may not be awarded in addition to liquidated damages" for FLSA violations, Brock v. Superior Care, Inc., 840 F.2d 1054, 1064 (2d Cir. 1988) (citation omitted), plaintiffs are entitled to prejudgment interest on

compensatory damages awarded under the NYLL only to the extent that they are not being awarded liquidated damages under the functionally equivalent claim for damages under the FLSA, see, e.g., Demirovic v. Ortega, 15 CV 327 (CLP), 2018 WL 1935981, at *7 (E.D.N.Y. Apr. 24, 2018), aff'd, 711 F.App'x 111 (2d Cir. 2019); Piedra v. Ecua Rest., Inc., 17 CV 3316 (PKC) (CLP), 2018 WL 1136039, at *16 (E.D.N.Y. Jan. 31, 2018), adopted as modified, 2018 WL 1135652 (E.D.N.Y. Feb. 28, 2018); Santillan v. Henao, 822 F.Supp.2d 284, 298 (E.D.N.Y. 2011).  Here, because the Court is recommending that plaintiffs receive damages for minimum wage violations only under the NYLL, plaintiffs should be awarded prejudgment interest on that claim.  The Court further recommends awarding prejudgment interest on plaintiffs' claims for unpaid overtime wages arising under the NYLL, but not on their claims for unpaid overtime wages arising under FLSA (i.e., the damages accruing during the period of time for which Sunny would be jointly and severally liable for 43 Ave's violations under the substantial-continuity test).

"Under New York law, prejudgment interest is calculated at a rate of 9% per annum." Jiaren Wei v. Lingtou Zhengs Corp., No. 13-CV-5164 (FB)(CLP), 2015 WL 739943, at *17 (E.D.N.Y. Feb. 20, 2015) (citing N.Y. C.P.L.R. § 5001).  Interest may be calculated from "the earliest ascertainable date the cause of action existed."  N.Y.C.P.L.R. § 5001(b). Where, however, "damages were incurred at various times, interest shall be computed . . . from a single reasonable intermediate date."  Id.  The date from which to compute prejudgment interest is left to the "wide" discretion of the court.  See Conway v. Icahn & Co., Inc., 16 F.3d 504, 512 (2d Cir. 1994) (upholding award of prejudgment interest from the date

the action was commenced); RKI Constr., LLC v. WDF Inc., 14-cv-1803 (KAM)(VMS), 2020 WL 6545915, at *22 (E.D.N.Y. Nov. 6, 2020).

Because Sunny is not jointly and severally liable with 43 Ave for the latter's minimum wage violations arising under the NYLL, the Court determines an intermediate date from which to calculate prejudgment interest for each defendant.  In this case, with respect to 43 Ave, a reasonable intermediate date for calculating plaintiffs' unpaid minimum wages and overtime is July 1, 2013, which is the midpoint between February 28, 2011 and November 2, 2015, the period during which 43 Ave owned and operated Top N' Quality, and during which plaintiffs' claims for wage deficiencies under the NYLL accrued.

As to Sunny, a reasonable intermediate date for calculating plaintiffs' unpaid minimum wages and overtime is June 20, 2016, which is the midpoint between November 2, 2015 and January 31, 2017, the period during which Sunny owned and operated Top N' Quality, and during which plaintiffs' claims for wage deficiencies under the NYLL accrued.

Using those two midpoints, the Court calculates the daily rate of prejudgment interest accruing on the proposed awards for NYLL minimum wage deficiencies owed by each defendant as follows: Plaintiffs are entitled to recover from 43 Ave nine percent prejudgment interest on damages totaling $43,436.13, at daily rate of $10.71 (($43,436.13 x .09) ÷ 365), from July 1, 2013 until entry of judgment.  And plaintiffs are entitled to recover from Sunny nine percent prejudgment interest on damages totaling $10,774.75, at daily rate of $2.66 (($10,774.75 x .09) ÷ 365), from June 20, 2016 until entry of judgment.

### 2.  Post-Judgment Interest

Plaintiffs also requests post-judgment interest.  See SAC ¶¶ 3-4; id. ad damnum clause; Pl. Mem. at 13.  Pursuant to 28 U.S.C. § 1961, "[i]nterest shall be allowed on any money

judgment in a civil case recovered in a district court."  Therefore, the Court recommends that plaintiffs be awarded post-judgment interest "to be calculated from the date the Clerk of the Court enters judgment in this action until the date of the payment, at the rate set forth in 28 U.S.C. § 1961."  Sajvin v. Singh Farm Corp., No. 17-CV-04032, 2018 WL 4214335, at *8 (E.D.N.Y. Aug. 13, 2018), adopted, 2018 WL 4211300 (E.D.N.Y. Sept. 4, 2018).

### E.   Attorneys' Fees and Costs

#### 1.  Applicable Legal Standard

Under both the FLSA and the NYLL, a prevailing plaintiff is entitled to an award of "reasonable" attorneys' fees and costs.  See 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1). The plaintiff bears the burden of proving the reasonableness of the fees sought.  See Savoie v. Merchs. Bank, 166 F.3d 456, 463 (2d Cir. 1999).  In considering an application for attorneys' fees, the Court must first determine the presumptively reasonable fee.  See Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183-84 (2d Cir. 2008).  This presumptively reasonable fee is essentially "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively."  Simmons v. N.Y.C. Transit Auth., 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks and citation omitted).

Courts can and should exercise broad discretion in determining a reasonable fee award. See Hensley v. Eckerhart, 461 U.S. 424, 437 (1983) ("The court necessarily has discretion in making this equitable judgment."); Arbor Hill, 522 F.3d at 190 (referencing the court's "considerable discretion").  The method for determining reasonable attorneys' fees in this Circuit is based on a number of factors, such as the labor and skill required, the difficulty of

the issues, the attorneys' customary hourly rate, the experience, reputation and ability of the attorney, and awards in similar cases.  See Arbor Hill, 522 F.3d at 186 n.3, 190.  In particular, when assessing an attorney's requested hourly rate, courts typically consider other rates awarded in the district in which the reviewing court sits.  See Simmons, 575 F.3d at 174-75.  This is known as the "forum rule."  See id. (recounting history of the forum rule); see also Arbor Hill, 522 F.3d at 191 ("We presume, however, that a reasonable, paying client would in most cases hire counsel from within his district, or at least counsel whose rates are consistent with those charged locally.").

Once the Court determines the reasonable hourly rate, it must multiply that rate by the number of hours reasonably expended, in order to determine the presumptively reasonable fee.  See Arbor Hill, 522 F.3d at 190 n.5.  With very limited exceptions, "contemporaneous time records are a prerequisite for attorney's fees in this Circuit."  N.Y. State Ass'n for Retarded Child., Inc. v. Carey, 711 F.2d 1136, 1147 (2d Cir. 1983).

In the instant matter, plaintiffs seek $13,005 in attorneys' fees for the time expended by Ge Qu, Jian Hang, Zindzi Baugh Corbett, Leticia Ochoa, and Maritza Yanes.  See Affirmation of Ge Qu (Mar. 18, 2021) ("Ge Qu Aff.") ¶¶ 43-57, DE #53; Attorney Billing Invoice (Mar. 18, 2021) ("Atty. Bill"), DE #53-4; Pl. Mem. at 17.

### 2.  Reasonable Hourly Rate

In relation to their case, plaintiffs request the following hourly rates: $350 for the work performed by Jian Hang (principal attorney), $300 for Ge Qu (senior associate), $200 for Zindzi Baugh Corbett (first-year associate), $150 for Leticia Ochoa (law clerk), and $150 for Maritza Yanes (law clerk), all of whom are employed with the law firm Hang & Associates, PLLC ("H&A").  See Ge Qu Aff. ¶¶ 43-57; see also Atty. Bill.  "Courts in this District have

held reasonable hourly rates in FLSA cases to be approximately $300-[$]450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-[$]80 for legal support staff." Miranda v. Astoria Provisions, LLC, 19-CV-02923 (EK) (PK), 2020 WL 6370058, at *10 (E.D.N.Y. July 24, 2020) (quotation marks and citation omitted), adopted, 2020 WL 5810160 (E.D.N.Y. Sept. 30, 2020).

As an initial matter, a review of the invoice submitted by counsel reveals that plaintiffs were not billed for any work performed by Jian Hang, and no other documentation has been submitted to the contrary. See generally Atty. Bill. In assessing attorneys' fees, other courts have declined to consider Mr. Hang's hourly rate where no records were provided concerning his involvement in the case at issue. See, e.g., Gao v. Jian Song Shi, 18 CV 2708 (ARR)(LB), 2021 WL 1949275, at *18 (E.D.N.Y. Apr. 30, 2021) (reasoning that Mr. Hang's $350 hourly rate was one regularly awarded for someone with his legal experience but declining to further address his hourly rate due to the lack of billing records documenting his work), adopted sub nom. Bin Gao v. ABC Corp., 2021 WL 1946322 (E.D.N.Y. May 15, 2021). As such, the Court similarly declines to account for Mr. Hang in its calculation of plaintiffs' attorneys' fees.

With respect to Mr. Qu, as discussed *supra*, his requested hourly rate of $300 is at the high end of the rates typically awarded to senior associates in FLSA cases in this District. See Miranda, 2020 WL 6370058, at *10. According to his affirmation, Mr. Qu is a senior associate at H&A; he received his law degree from Fordham University School of Law, and his LLM degree from Duke University; and he is in his "fourth year practicing wage and hour law." Ge Qu Aff. ¶¶ 50-53. Despite Mr. Qu's considerable experience, plaintiffs' pleadings are rife with errors and inconsistencies, see, e.g., *supra* notes 2, 7, 12, 14, 15, and, notably,

Mr. Qu failed to apprise the Court that two of the named plaintiffs are no longer pursuing the claims at issue here, see supra note 1.[34]  While Mr. Qu has spent significant time on this litigation, particularly in comparison to his colleagues, see Atty. Bill, the Court nevertheless recommends an hourly rate of $200 due to the default posture in this matter, as well as the lack of care and diligence with which he has litigated plaintiffs' case.

Plaintiffs further request a $200 hourly rate for Ms. Corbett's work on the case as a first-year associate at H&A, which, as discussed supra, is at the high end of the rates typically awarded to junior associates in FLSA cases.  Despite this high request, plaintiffs' counsel failed to provide basic information about Ms. Corbett's credentials or experience, such as the year she graduated from law school, her academic qualifications, and the rates that other courts have deemed reasonable for her work.  See, e.g., Qu Ge Aff. ¶ 54 (stating only that "Zindzi Baugh Corbett was a first-year associate of H&A at all relevant times to this action" and that they "request an hourly rate of $200 for her").  According to Ms. Corbett's biography on H&A's website, she has been admitted to the New York state bar and has experience representing clients in wage-and-hour claims.  See Zindzi Baugh Corbett, HANG & ASSOCIATES, LLC (last visited Sept. 9, 2021).  However, Ms. Corbett was only recently admitted to the bar,[35] and no other details are provided concerning the length of her experience

---

[34] In addition, counsel failed to allocate damages as between 43 Ave and Sunny, and assumed, without legal basis, that 43 Ave was responsible for violations subsequently committed by the purchaser of its business.

[35] In another case, the court awarded a $90 hourly rate for Ms. Corbett's legal services where, as here, no background information had been provided about her qualifications.  See Wing Chan v. Xifu Food, Inc., 18 CV 5445 (ARR) (RML), 2020 WL 5027861, at *11 (E.D.N.Y. Aug. 5, 2020), adopted, 2020 WL 5027147 (E.D.N.Y. Aug. 25, 2020).  Notably, in Wing Chan, Ms. Corbett had not yet been admitted to the bar at that time.  See id.  The Court can therefore reasonably infer that Ms. Corbett has recently been admitted in New York – a fact that further supports reducing her requested hourly rate of $200.

in labor law.  See id.; Qu Ge Aff.  Given her relative inexperience as a first-year associate, this Court respectfully recommends an hourly rate of $100 for Ms. Corbett.

In addition, plaintiffs request an hourly rate of $150 for each of the law clerks that performed work on their case, Ms. Ochoa and Ms. Yanes.  See Ge Qu Aff. ¶¶ 55-56; Atty. Bill.  However, counsel's affirmation provides no information concerning the nature of Ms. Ochoa's or Ms. Yanes' positions, aside from the title of "law clerk."  See generally Ge Qu Aff.  Therefore, it is unclear whether these individuals are part of H&A's legal support staff or law school graduates awaiting admission to the bar.  In any event, "[i]n this district, fees for law clerks are awarded at the same rates as legal assistants and support staff."  Gao, 2021 WL 1949275, at *18 (citing Cortes v. Juqila Mexican Cuisine Corp., 17-CV-3942 (RER), 2021 WL 1193144, at *2 (E.D.N.Y. Mar. 29, 2021), and LG Capital Funding, LLC v. 5Barz Int'l, Inc., 16-CV-2752(KAM)(JO), 2019 WL 3082478, at *2 (E.D.N.Y. July 15, 2019)).  Where, as here, little information has been provided concerning these individuals' qualifications and background apart from the title of "law clerk," courts have awarded hourly rates between $70 and $100.  See id. (reducing the requested hourly rate from $150 to $85 for a law clerk); see also Luk v. ABNS NY Inc., 18-CV-5170 (AMD), 2021 WL 829417, at *6 (E.D.N.Y. Feb. 29, 2021) (reducing H&A's law clerk rates from $150 to $100), adopted sub nom. Ying Ying Dai v. ABNS NY Inc., 2021 WL 826014 (E.D.N.Y. Mar. 3, 2021).  As explained in the next paragraph, this is a persistent problem with H&A's fee applications, warranting an award of only $70 per hour for each of the law clerks.

The H&A invoice also lists an individual by the name of Diana Seo as having completed a total of .30 hours of work on plaintiffs' case at an hourly rate of $300 – totaling

44

$90 in fees.  See Atty. Bill.  "[D]espite a series of judicial opinions slashing fee requests relating to the same law firm, Hang & Associates, PLLC[ ], for recurring deficiencies in their applications," no information has been provided concerning Ms. Seo.  Young Ok v. Family Bob, 20-CV-906 (ENV), 2021 U.S. Dist. LEXIS 15713, at *36 (E.D.N.Y. Jan. 26, 2021). "Because expertise is a critical factor in evaluating the reasonableness of a billing rate," many jurists have "slashed fee awards involving the Hang law firm, on account of recurring deficiencies such as missing background information on each individual who worked on the case."  Liu v. Millenium Motors Sports, No. 17-CV-06438 (RPK) (RER), 2021 U.S. Dist. LEXIS 99088, at *23 (E.D.N.Y. May 24, 2021) (quotation marks and citation omitted), adopted, 2021 WL 3463193 (E.D.N.Y. Aug. 6, 2021).  Thus, the Court recommends an hourly rate of $100 for Ms. Seo, given the complete lack of information provided by counsel.

In sum, this Court respectfully recommends that the following hourly rates should be considered reasonable for the H&A employees associated with plaintiffs' case: $200 for Mr. Qu; $100 for Corbett; $70 for Ms. Ochoa and for Ms. Yanes; and $100 for Ms. Seo.

### 3. Reasonable Number of Hours

Counsel submits that he and his colleagues spent a total of 46.10 hours on this matter, and, in support thereof, he has submitted contemporaneous time records specifying how these hours were spent litigating plaintiffs' case.  See Atty. Bill.  While the Court believes that counsel should have pursued plaintiffs' claims in a more expedient manner, it also recognizes that counsel has not submitted requests for attorneys' fees for work performed prior to H&A's representation of plaintiffs.  In light of this consideration, the Court concludes that the time that the spent on plaintiffs' case is reasonable.

Accordingly, this Court recommends awarding attorneys' fees as follows:

45

| Individual | Hours | Requested Rate | Recommended Rate | Recommended Fees |
|---|---|---|---|---|
| Ge Qu | 37.9 | $300 | $200 | $7,580 |
| Zindzi Baugh Corbett | 2.4 | $200 | $100 | $240 |
| Leticia Ochoa | .40 | $150 | $70 | $28 |
| Maritza Yanes | 5.1 | $150 | $70 | $357 |
| Diana Seo | .30 | $300 | $100 | $30 |
| **Total:** | | | | **$8,235** |

Applying the above reduced hourly rates to the number of hours reflected in counsel's billing records, the Court recommends awarding plaintiffs attorneys' fees in the amount of $8,235.

### 4. Costs

Plaintiffs further request an award of $593 for filing fees and costs incurred in effecting service of process. See SAC ¶¶ 3-4, 174, 181, 186, 190; id. *ad damnum* clause; Ge Qu Aff. ¶¶ 60-61; Atty. Bill at 4; Pl. Mem. at 17. Plaintiffs' counsel submits that these costs are for a $400 filing fee and for two $96 service-of-process fees. See Atty. Bill at 4. As a general matter, a prevailing plaintiff in an action under the FLSA and the NYLL is entitled to recover costs from the defendants, see 29 U.S.C. § 216(b); N.Y. Lab. Law § 663(1), as long as those costs are tied to "[i]dentifiable, out-of-pocket disbursements," see Fan v. Jenny & Richard's Inc, 17-CV-6963 (WFK), 2019 WL 1549033, at *15-16 (E.D.N.Y. Feb. 22, 2019) (alteration in original) (citation omitted), adopted, 2019 WL 1547256, (E.D.N.Y. Apr. 9, 2019). Since the costs incurred here are routinely recoverable, the Court recommends awarding plaintiffs costs in the requested amount of $593.

### CONCLUSION

For the foregoing reasons, the Court respectfully recommends that plaintiffs' motion for default judgment be granted in substantial part, and that plaintiffs be awarded damages

against each defendant, allocated among the plaintiffs consistent with the calculations reflected above. The Court recommends that plaintiffs be awarded damages against 43 Ave as follows: $43,436.13 in unpaid overtime wages and minimum wages, $43,436.13 in liquidated damages, and $15,000 in WTPA damages. Of those sums, the Court recommends that Sunny be held jointly and severally liable for $15,731.05 for 43 Ave's FLSA overtime violations and $15,731.05 for liquidated damages on that sum. The Court further recommends that Sunny be held liable for its own violations in the following amounts: $10,774.75 in unpaid overtime wages and minimum wages, $10,774.75 in liquidated damages on that sum, and $15,000 in WTPA damages. The Court further recommends awarding plaintiffs an additional amount of $8,235 in attorneys' fees, and $593 in costs against both defendants, jointly and severally. The Court also recommends awarding nine percent prejudgment interest on the minimum wage and overtime violation damages under the NYLL, to be calculated as follows by the Clerk of the Court: With respect to 43 Ave, interest on $43,436.13 at a daily rate of $10.71 from July 1, 2013 until the final judgment is entered; and with respect to Sunny, interest on $10,774.75 at a daily rate of $2.66 from June 20, 2016 until the final judgment is entered.

Any objections to the recommendations contained herein must be filed with Judge LaShann DeArcy Hall on or before September 29, 2021. Failure to file objections in a timely manner may waive a right to appeal the District Court order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

The Clerk of the Court is respectfully requested to docket this opinion into the ECF court file and to send copies to each defendant at:

> 42-16 43rd Avenue
> Sunnyside, NY 11104

**SO ORDERED.**

**Dated:    Brooklyn, New York**
**September 13, 2021**

/s/  *Roanne L. Mann*

**ROANNE L. MANN**
**UNITED STATES CHIEF MAGISTRATE JUDGE**